## HARRIS v. UNITED STATES

No. A–145.   Decided August 31, 1971

MR. JUSTICE DOUGLAS, Circuit Justice.

This is an application for bail pending appeal to the Court of Appeals for the Ninth Circuit.   Both the District Court and the Court of Appeals have previously denied similar applications, and their action is entitled to great deference.   *Reynolds* v. *United States*, 80 S. Ct. 30, 4 L. Ed. 2d 46 (1959).   Nevertheless, "where the reasons for the action below clearly appear, a Circuit Justice has a non-delegable responsibility to make an independent determination of the merits of the application."   *Id.*, at 32, 4 L. Ed. 2d, at 48.   Fed. Rule Crim. Proc. 46 (a)(2); 18 U. S. C. §§ 3146, 3148.   Accord, *Sellers* v. *United States,* 89 S. Ct. 36, 21 L. Ed. 2d 64 (1968).   While there is no automatic right to bail after convictions, *Bowman* v. *United States,* 85 S. Ct. 232, 13 L. Ed. 2d 171 (1964), "[t]he Command of the Eighth Amendment that 'Excessive bail shall not be required . . .' *at the very least* obligates judges passing upon the right to bail to deny such relief only for the strongest of reasons." *Sellers, supra,* at 38, 21 L. Ed. 2d, at 66.   The Bail Reform Act of 1966, 18 U. S. C. §§ 3146, 3148, further limits the discretion of a court or judge to deny bail, as it provides that a person *shall* be entitled to bail pending appeal, if that appeal is not frivolous or taken for delay, or "unless the court or judge has reason to believe that no one or more

conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community." § 3148.

Applying these principles, my examination of the papers submitted by applicant and by the Solicitor General in opposition persuade me that the Government has not met its burden of showing that bail should be denied.

The primary ground upon which the Solicitor General opposes bail is that "[t]here are no substantial questions raised" by the appeal. It is true that the questions raised relate primarily to evidentiary matters. It is settled, however, that these are within the purview of review of an application of this kind, and that they may raise nonfrivolous—indeed, even "substantial"— questions. See, e. g., *Wolcher* v. *United States,* 76 S. Ct. 254, 100 L. Ed. 1521 (1955).

Applicant principally argues that there was no evidence in the record from which an inference is permissible that he knew that a truck guided by him and a codefendant, in a separate vehicle, from one location in Los Angeles to another location in that city contained unlawfully imported narcotics. It is beyond question, of course, that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged would violate due process. See *Adderley* v. *Florida,* 385 U. S. 39, 44 (1966). See also *Johnson* v. *Florida,* 391 U. S. 596 (1968); *Thompson* v. *Louisville,* 362 U. S. 199 (1960). The quantum and nature of proof constitutionally required to support an inference of knowledge in narcotics offenses is not always an easy question. Cf. *Turner* v. *United States,* 396 U. S. 398 (1970); *Leary* v. *United States,* 395 U. S. 6 (1969). Applicant cites a case from the Ninth Circuit as a factually similar example in which a conviction for a narcotics offense was reversed for lack of proof of knowledge that another possessed the contraband. While I

express no opinion on the merits of the analogy, Circuit Justices have granted bail pending appeal based in part on similar claims of failure of proof. See, *e. g., Brussel* v. *United States,* 396 U. S. 1229 (1969).

Applicant also challenges the hearsay testimony of an informer as to a Tijuana phone number given to him by a reputed Mexican narcotics trafficker. Other evidence demonstrated that applicant's codefendant called this number several times prior to the importation of the contraband in July 1969. The implication, presumably, is that the prior calls were made to arrange the shipment. The hearsay declaration, however, was made over a year after the codefendant's phone calls occurred, and the common scheme sought to be proven had been terminated. Under these circumstances, the admissibility of this declaration as a hearsay exception is not free from doubt. Cf. *Fiswick* v. *United States,* 329 U. S. 211 (1946).

Assuming this testimony is otherwise admissible, applicant argues it is not the "best evidence" of the registration of the phone number. While it is true that Mexican phone company records were beyond the subpoena power of the court, and that courts have held that secondary evidence may be used without further ado in such a case, see, *e. g., Hartzell* v. *United States,* 72 F. 2d 569 (CA8 1934), applicant's argument is nevertheless not without merit:

> "[T]he policy of the original document requirement, and probably the weight of reason, supports the view of those courts equally numerous who demand . . . that before secondary evidence is used, the proponent must show either that he has made reasonable efforts without avail to secure the original from its possessor, or circumstances which persuade the court that such efforts would have been fruitless."

C. McCormick, Evidence § 202, p. 415 (1954), and cases cited. It is noteworthy in this regard that the District Court rejected evidence offered by applicant tending to show that the phone number in question was not registered to the purported narcotics trafficker before December 1970.

I cannot say that these contentions are all frivolous. The District Judge stated in his opinion denying bail that "[n]o objections were interposed to the telephone calls to Tiajuana [sic] made by co-defendant." He made no mention, however, of applicant's challenge to the hearsay declaration of the Mexican narcotics trafficker. If this challenge should prevail, "it might well tip the scales in defendant's favor, as it goes to the heart of the case." *Wolcher, supra,* at 255, 100 L. Ed., at 1523.*

Where an appeal is not frivolous or taken for delay, bail "is to be denied only in cases in which, from substantial evidence, it seems clear that the right to bail

---

*Applicant also renewed at trial, and raises here, a question of substantial nature which was before this Court last Term. The District Court in this case entered a pretrail order suppressing the contraband found in the truck. However, the Ninth Circuit reversed, on an interlocutory appeal by the Government. It felt that the actions of the customs agents constituted an "extended border search," justified by the fact that the truck had been under continuous surveillance from the time it crossed the Mexican border. I granted a stay of the Court of Appeals' interlocutory judgment pending disposition of the petition for certiorari; partly because of questions concerning the propriety of the interlocutory procedure, but also because of the differing approaches used by the Ninth and the Fifth Circuits to justify extended border searches. *Harris* v. *United States,* 400 U. S. 1211 (1970). The full Court, however, denied certiorari. *Harris* v. *United States,* 400 U. S. 1000 (1971). This action does not necessarily indicate a view as to the merits of either of the questions above. Possibly the interlocutory posture of the case was the determining factor. Nevertheless, applicant's Fourth Amendment claims have not been considered in the decision to grant this application. Cf. *Drifka* v. *Brainard,* 89 S. Ct. 434, 21 L. Ed. 2d 427 (1968).

may be abused or the community may be threatened by the applicant's release." *Leigh* v. *United States,* 82 S. Ct. 994, 996, 8 L. Ed. 2d 269, 271 (1962); accord, *Rehman* v. *California,* 85 S. Ct. 8, 13 L. Ed. 2d 17 (1964). According to the Solicitor General, the District Judge denied bail in part because "there was reason to believe that defendant, who had no employment, would not respond to required future appearances and would be a danger to the community." Applicant's Bail Reform Act form indicates, however, that he is a self-employed auto mechanic making $150 per week, that he has lived in Los Angeles for the past eight years, that he has several relatives, including his mother and a sister, living there, and that he has never failed to make a required court appearance while on bail. The moving papers further indicate that applicant was at liberty after sentencing, pursuant to a stay of execution granted by the Court of Appeals, and that he voluntarily submitted to the authorities upon the expiration of the stay. There is not such "substantial evidence" in this record to justify denying bail on the ground that applicant is a flight risk.

Furthermore, a far stronger showing of danger to the community must be made than is apparent from this record to justify a denial of bail on that ground. See, *e. g., United States* v. *Erwing,* 280 F. Supp. 814 (ND Cal. 1968). Accordingly, bail should be granted pending disposition of the appeal in this case, pursuant to the standards set forth in the Bail Reform Act.

*It is so ordered.*