[Crim. No. 18616. In Bank. Jan. 27, 1976.]

In re ALAN EUGENE PODESTO on Habeas Corpus.

924

**COUNSEL**

Donald C. Smaltz and Michael D. Scott for Petitioner.

Roger S. Hanson, J. Perry Langford and Stephen J. Perrello as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Vincent J. Scally, Jr., Deputy Attorneys General, for Respondent.

**OPINION**

**TOBRINER, J.**—In this case we must determine the criteria that trial and appellate courts in this state may properly consider in passing upon applications by convicted felons for release pending appeal of their convictions.[1] Petitioner, relying on several distinct state and federal

---

[1]Throughout this opinion, we shall utilize the terms "release pending appeal" and "bail pending appeal" interchangeably. We believe that the "release pending appeal"

constitutional theories, contends that, except in capital cases, all such defendants are entitled to release pending appeal "as a matter of right." As we shall explain, we find this contention untenable and conclude that, as provided by Penal Code section 1272, the decision to release a convicted felon pending appeal generally rests in the "discretion" of the court. Although petitioner also complains that section 1272's broad grant of "discretion" invests the court with unbridled authority in this area, we explain that numerous judicial precedents disclose general guidelines for the exercise of such discretion, illuminating the various considerations that courts properly should look to in determining whether to grant release on appeal.

Despite the presence of these judicial guidelines, however, we recognize that appellate courts frequently have had difficulty in ascertaining whether a trial court in ruling upon an application for release pending appeal has focused on the appropriate criteria because a trial court has not been required to articulate the grounds upon which it has relied in denying such an application. In recent years, our court has had occasion to emphasize in a wide variety of contexts that governmental decisions which affect important individual interests should be accompanied by at least a brief statement of reasons explaining the basis for such decision. (See, e.g., *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].) Applying the reasoning underlying these recent authorities, we have concluded that in the future a trial court in denying an application for bail on appeal should provide a brief statement of reasons for its ruling.

1. *The facts of the instant case.*

In August 1974, petitioner Alan E. Podesto (hereafter defendant) was stopped for an alleged traffic violation. When a search of the trunk of his automobile disclosed a large quantity of marijuana, he was arrested and charged with possession of marijuana for sale and sale of marijuana. (Health & Saf. Code, §§ 11359, 11360.) Shortly thereafter he filed a pretrial motion seeking to suppress the evidence upon which the charges

terminology is generally preferable to the more common "bail pending appeal" nomenclature, because the former term clearly indicates that money bail is only one condition, among others, that courts may utilize in the exercise of judicial discretion to assure a defendant's presence at all necessary proceedings. (See Cal. Const., art. I, § 12; Pen. Code, §§ 1269c, 1291, 1295, 1318. See generally A. B. A. Project on Min. Standards for Crim. Justice, Standards Relating to Pretrial Release (Approved Draft 1968) §§ 5.2, 5.3, pp. 56-61; 18 U.S.C. § 3146(a).)

rested. Defendant claimed that even though the search of the car trunk followed the officer's discovery of a small quantity of marijuana debris in the rear seat of defendant's automobile, the search was nonetheless illegal for lack of probable cause.[2]

The initial magistrate agreed that the search was improper, suppressing the evidence and dismissing the charges against defendant. The People thereafter refiled the identical charges (see *People* v. *Uhlemann* (1973) 9 Cal.3d 662, 669 [108 Cal.Rptr. 657, 511 P.2d 609]) and, after a second hearing before a different magistrate, the second magistrate ruled against defendant and refused to suppress the evidence. Defendant then sought suppression in the superior court; upon the denial of that motion he petitioned for a writ of mandate in the Court of Appeal. The appellate court denied the writ without opinion.

Defendant then entered a plea of guilty to the charge of possession of marijuana for sale and incurred a sentence to state prison for the term prescribed by law. Defendant has appealed from the conviction on the basis of the allegedly illegal search and seizure (see Pen. Code, § 1538.5, subd. (m)); the appeal is presently pending in the Court of Appeal.

Two days after sentencing, after filing his notice of appeal, defendant moved in the superior court for an order releasing him on bail pending appeal. In arguing for release, defense counsel pointed out that throughout the criminal proceedings defendant had made all appearances in court while released on his own recognizance, that defendant had a job opportunity available to him in the community and that counsel believed that there was a strong possibility that the conviction would be reversed on appeal. Nevertheless, the trial court denied the motion for bail on appeal, indicating in very brief fashion that its denial was based in part on the fact that defendant's pretrial petition for a writ of mandamus had been denied and also on the "threat" involved in the matter.[3] After defendant's subsequent application for bail pending

---

[2]The question whether a police officer may validly conduct a warrantless search of the trunk of an automobile after finding a small quantity of marijuana in the rear seat of the vehicle is presently before this court in *Wimberly* v. *Superior Court* (L.A. 30458, hg. granted, Apr. 16, 1975). The Courts of Appeal have reached somewhat varying conclusions with respect to this issue. (Compare *People* v. *Gregg* (1974) 43 Cal.App.3d 137 [117 Cal.Rptr. 496] with *People* v. *Superior Court (Courie)* (1974) 44 Cal.App.3d 207 [118 Cal.Rptr. 586].)

[3]The court stated in full: "Well, I'm not intending to cite all the reasons, but we'll observe that sentence was imposed in each case and one of the reasons was because of the threat involved.

"Another observation the Court will make is that the Petitions for Writ of Mandamus

appeal was summarily denied by the Court of Appeal,[4] he filed the present petition seeking an order of this court granting release on appeal. We issued an order to show cause in order to explore the question of the continued viability and general clarity of past California decisions addressing the issue of "bail on appeal."

---

were denied in this case.

"The Defendant's Motions are at this time denied and Defendants remanded to the custody of the Sheriff for delivery pursuant to March 12th."

Although the court's reference to the "threat involved" is not completely clear, this language apparently relates to one passage of defendant's probation report which was before the trial court when it sentenced defendant to state prison two days earlier. In describing defendant's involvement in the instant offense, the probation report noted that while the defendant did not appear to have control of the 85 pounds of marijuana found in the trunk of his car—a codefendant possessed the only key to the trunk—defendant still had knowledge of the marijuana and had agreed to transport the contraband in return for a payment of $400. Concluding that "defendant's involvement in the transporting of such a large quantity of marijuana is an integral part of the drug distribution operation . . . [and] poses a serious *threat* to the community" (italics added), the report recommended that defendant's conduct "be dealt with in a harsh and punitive manner by sentencing the defendant to the State Department of Corrections."

[4]In conjunction with this application to the Court of Appeal, defense counsel filed a lengthy affidavit, detailing many features of the defendant's background that are highly relevant to the release on appeal decision. The affidavit described the defendant as a 24-year-old college student, nearing completion of a degree in ceramics, who had been born and lived all of his life with his family in Modesto; the affidavit stated that defendant had no prior criminal conviction (although he had been "diverted" as a result of an earlier charge of possession of a small quantity of marijuana (see Pen. Code, § 1000 et seq.)) and that in the instant criminal proceedings defendant had appeared at all 11 court sessions while released on his own recognizance. The affidavit did not explain, however, why the foregoing facts had not been presented to the trial court in connection with the initial request for release pending appeal.

Past California cases have clearly postulated that applications for bail pending appeal must generally be presented in the first instance to the trial court. (See, e.g., *In re Brumback* (1956) 46 Cal.2d 810, 816-817 [299 P.2d 217]; *People* v. *Perdue* (1874) 48 Cal. 552, 553; Cal. Rules of Court, rule 32(b).) Implicit in these rulings is the requirement that a defendant submit all relevant facts to the trial court for its consideration before urging such facts to an appellate court in review of the trial court's exercise of discretion. Although some of the facts referred to in the affidavit filed in the Court of Appeal were contained in the probation report which was before the trial court, it remained the responsibility of defense counsel to gather the relevant information from all sources and to marshall before the trial court the facts on which defendant intended to rely; the trial court cannot reasonably be required to scour the entire record *sua sponte.* Because defendant provided no explanation for the failure to present the detailed facts to the trial court, the Court of Appeal in the instant case could properly have refused to consider the additional information provided in counsel's "supplemental" affidavit. (See, e.g., *People* v. *Turner* (1974) 39 Cal.App.3d 682, 687 [114 Cal.Rptr. 372].)

As we discuss, *infra*, we have concluded that defendant is entitled to renew his application for bail on appeal in the trial court. If he decides to do so, defense counsel may submit the factual background contained in the supplemental affidavit to that court for its consideration.

2. ▆ *Penal Code section 1272, providing that bail on appeal is a "matter of discretion" in felony cases in which imprisonment has been imposed, does not violate article 1, section 12 of the California Constitution.*

Penal Code section 1272 provides today, as it and its predecessor statutes have for a century and a quarter, that a convicted felon who is sentenced to a term of imprisonment "may be admitted to bail . . . [a]s a matter of discretion."[5] Defendant contends initially that this clear statutory mandate conflicts with article I, section 12 (formerly art. I, § 6) of the California Constitution, which states in relevant part that "A person shall be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great."[6] Defendant claims that article I, section 12 ensures to all defendants in non-capital cases the availability of release on bail as a matter of right, both *before* and *after* conviction.

Defendant recognizes that in a series of cases reaching back more than 100 years, this court has rejected this identical legal contention and has held that the state constitutional right to bail applies only before

---

[5]Section 1272 presently reads in full:

"After conviction of an offense not punishable with death, a defendant who has made application for probation or who has appealed may be admitted to bail:

"1. As a matter of right, before judgment is pronounced pending application for probation in cases of misdemeanors, or when the appeal is from a judgment imposing a fine only.

"2. As a matter of right, before judgment is pronounced pending application for probation in cases of misdemeanors, or when the appeal is from a judgment imposing imprisonment in cases of misdemeanors.

"3. As a matter of discretion in all other cases."

The initial forerunner of section 1272 was enacted in 1850 and provided: "After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail: 1st. As a matter of right, where the appeal is from a judgment imposing a fine only. 2d. As a matter of discretion in all other cases." (Stats. 1850, ch. 119, § 544, p. 315.) In 1872, this provision was incorporated into the newly established Penal Code as section 1272. Since 1872, the section has been amended only twice: first, in 1909, to provide for bail as a matter of right pending appeal of all misdemeanor convictions (Stats. 1909, ch. 360, § 1, p. 591); and second, in 1971, to provide for bail as a matter of right for convicted misdemeanants pending application for probation. (Stats. 1971, ch. 1790, § 3, p. 3856.)

[6]Prior to 1974, article I, section 6 of the California Constitution provided in relevant part: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great." In November 1974, the voters passed a constitutional amendment which comprehensively reorganized all the provisions of article I of the Constitution. As noted in text, the quoted portion of former article I, section 6 was readopted with some minor changes as article I, section 12. The comments accompanying the constitutional revision indicate that the measure generally intended no substantive changes by such minor changes in language.

conviction. (See, e.g., *In re Scaggs* (1956) 47 Cal.2d 416, 418 [303 P.2d 1009]; *Ex parte Brown* (1885) 68 Cal. 176, 177 [8 P. 829]; *Ex parte Voll* (1871) 41 Cal. 29, 31-33.) Defendant argues, however, that all of these cases were erroneously decided and that their fundamental rationale has been invalidated by more recent pronouncements of this court, particularly *In re Underwood* (1973) 9 Cal.3d 345 [107 Cal.Rptr. 401, 508 P.2d 721].

In *Underwood,* this court addressed the question of whether a prisoner who was charged with a non-capital offense could be denied bail on the ground that his release would pose a danger to the public. We answered that question in the negative, holding that the California Constitution granted an absolute right to *preconviction* bail in non-capital cases, and did not authorize a "public safety" exception to its provisions. Because *Underwood* did not involve a question of bail pending appeal, that case lends no support to defendant's contention.

In attempting to find support for his broad constitutional interpretation in *Underwood,* defendant cites one passage of the opinion which states: "The purpose of bail is to assure the defendant's attendance in court when his presence is required, *whether before or after conviction.*" (Italics added.) (9 Cal.3d at p. 348.) As we discuss below, this is an entirely accurate statement, for California courts have long acknowledged that a primary purpose of bail after conviction is to assure that a defendant will not flee the jurisdiction. The quoted passage from *Underwood* does not, however, equate the right of bail pending appeal with the right of preconviction bail and, indeed, a separate portion of the *Underwood* opinion explicitly recognizes the "substantial differen[ce]" between a defendant's right to bail before and after conviction. (See 9 Cal.3d at p. 347, fn. 1.)

Moreover, even if the language of *Underwood* could be construed to raise doubts as to the continued validity of the entire line of decisions attacked by defendant, such doubts should properly have been put to rest by this court's subsequent decision in *In re Law* (1973) 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621]. In rejecting a parolee's contention that he enjoyed a constitutional right to release on bail after being detained for an alleged parole violation, we carefully reviewed the language of article I, section 12 (then art. I, § 6) and recognized that the constitutional provision, by its own terms, was clearly intended to apply only to preconviction bail. As we stated in *Law:* "The constitutional provision, although it first states that 'All persons' shall be bailable, then

makes an exception 'for capital offenses when the proof is evident or the presumption [is] great.' The phrase 'the proof is evident or the presumption [is] great' can be relevant only as a limitation on the bailable nature *of a charged but unproven* capital offense; otherwise the proof and presumption would have been conclusively and finally established. The provision thus purports to deal not with all persons in an unlimited sense but rather with all persons *charged* with criminal offenses as only then does the whole of the language have relevancy. We have heretofore stated that the purpose served by the provision was 'fixing bail before trial.' (*People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 . . . .)" (Italics added.) (10 Cal.3d at pp. 25-26.)[7]

Accordingly, we reject defendant's contention that the provisions of section 1272 conflict with article I, section 12 of the California Constitution. (See also *People* v. *Turner* (1974) 39 Cal.App.3d 682, 684-686 [114 Cal.Rptr. 372].)

3. ▇▇▇ *Penal Code section 1272 does not violate the equal protection clauses of the federal or state Constitutions.*

Defendant alternatively argues that even if the California Constitution does not independently guarantee release on appeal as a matter of right, Penal Code section 1272 is still unconstitutional as a violation of the equal protection clauses of the federal and state Constitutions. As noted above (fn. 5, *ante*) section 1272 draws a distinction between convicted misdemeanants facing imprisonment and convicted felons

---

[7]The historical background of the constitutional provision and of Penal Code section 1272 reinforce this conclusion. The substantive guarantees now contained in article I, section 12 were first incorporated in the California Constitution of 1849, as article I, section 7. The language of that early constitutional provision closely paralleled the current provision, declaring that: "All persons shall be bailable by sufficient sureties; unless for capital offenses, when the proof is evident or the presumption great."

The year after the adoption of this constitutional provision, the Legislature enacted a comprehensive criminal practice act which provided, inter alia, for preconviction bail as a matter of right, in all but capital cases (Stats. 1850, ch. 119, § 541, p. 315) but specifically declared that bail pending appeal was generally a "matter of discretion." (Stats. 1850, ch. 119, § 544, p. 315 (see fn. 5, *ante*).) Thus, the 1850 Legislature quite clearly viewed the then recently adopted constitutional provision as directed only to the matter of preconviction bail. This contemporary legislative interpretation of the state constitutional right to bail, while not conclusive, is entitled to substantial weight. (See, e.g., *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 852 [59 Cal.Rptr. 609, 428 P.2d 593]; *Gage* v. *Jordan* (1944) 23 Cal.2d 794, 803 [147 P.2d 387]; *Williams* v. *United States* (1933) 289 U.S. 553, 573-574 [77 L.Ed. 1372, 1380-1381, 53 S.Ct. 751].) Contrary to defendant's contention, we find nothing in the brief constitutional debates on this matter which lends any support to the interpretation of the constitutional provision which he advocates.

facing imprisonment, providing bail on appeal as a matter of right for the former class but only discretionary bail on appeal for the latter category. Defendant contends that the disparate treatment of these two classes amounts to an invidious discrimination, precluded by the equal protection clauses. As we explain, we find this argument untenable.

■ "It is basic that the guarantees of equal protection . . . prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. This principle, of course, does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose. [Citations.] Moreover, 'in cases involving "suspect classifications" or touching on "fundamental interests" . . . the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that distinctions drawn by the law are *necessary* to further its purpose.' [Citations.]" (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983].)

■ In the instant case, defendant claims that the statutory provision must be measured against the "strict scrutiny" equal protection standard, asserting that the classification scheme vitally affects an individual's interest in "liberty," one of the most fundamental personal rights guaranteed by our state and federal Constitutions. Assuming that the "strict scrutiny" standard is the appropriate constitutional guideline in this matter (see, e.g., *United States* v. *Thompson* (1971) 452 F.2d 1333, 1340 [147 App.D.C. 1]), we nonetheless conclude that the classification scheme at issue here plainly passes constitutional muster.

A variety of compelling justifications demonstrate the reasonableness of the distinction drawn between convicted felons and convicted misdemeanants in this context. In the first place, the Legislature may reasonably have concluded that because of the relative brevity of the permissible term of imprisonment in misdemeanor cases, the entire right to appeal in such cases would be frequently vitiated unless release on appeal was guaranteed as a matter of right. Moreover, as discussed more fully hereafter, a primary consideration in the decision of bail on appeal concerns the likelihood that the defendant will flee the jurisdiction if released; again, because of the shortness of misdemeanor terms, the Legislature may have concluded that a misdemeanant would be unlikely to have much of an incentive to leave the jurisdiction. Finally, the Legislature may also have determined that misdemeanants do not

pose a danger to the community comparable to that of particular felons, and accordingly may have concluded that judges should not be accorded the discretion to deny bail in misdemeanor cases on such grounds.

In evaluating the adequacy of these justifications, we note also that the statutory scheme at issue here does not deny bail absolutely to all convicted felons and grant bail as a matter of right to all convicted misdemeanants; on the contrary, the disparity in treatment is much more modest, affording a right to release in one case and a right to the exercise of the court's discretion in the other. Under these circumstances, we hold that the resulting differential treatment is not invidious or unconstitutional.

4. ■ *In exercising "discretion" under Penal Code section 1272, courts may consider (1) the likelihood of the defendant's flight, (2) the potential danger to society posed by the defendant's release, and (3) the frivolousness or lack of diligence in defendant's prosecution of his appeal; moreover, to facilitate meaningful review trial courts should provide a brief statement of reasons supporting a denial of release pending appeal.*

Finally, defendant claims that even if he is not entitled to release on appeal as a matter of right, the trial court nonetheless abused its discretion under Penal Code section 1272 in denying release in this case. In order properly to analyze this issue, we must determine at the outset what considerations a trial or appellate court may properly weigh in determining whether or not to grant a convicted felon release on appeal.

The statutory language of section 1272 is, in itself, not especially helpful in this regard, for, as we have seen, the statute provides only that release may be ordered "as a matter of discretion." From the earliest cases construing this section, however, our courts have emphasized that the "discretion" referred to in the statutes "is not . . . an arbitrary discretion to do abstract justice according to the popular meaning of that phrase, but is a discretion governed by legal rules to do justice according to law . . . ." (*Ex Parte Hoge* (1874) 48 Cal. 3, 5.) Throughout the statute's history, the authorities have endeavored to articulate the "legal rules" or appropriate considerations which should properly guide courts in the exercise of their "legal" discretion.

As one jurist-commentator who has devoted considerable time and study to this problem has aptly pointed out, however, the decisions of

this court over the past century have not been entirely consistent in this task. (See Molinari, *Bail Pending Appeal in California* (1967) 1 U.S.F.L. Rev. 217, 218-222.) From an early decision indicating that judicial discretion under the statute should be liberally exercised in favor of granting release on appeal (*Ex Parte Hoge, supra,* 48 Cal. 3, 6-7), the court moved to an interpretation which indicated that release on appeal should only be ordered in "extraordinary circumstances." (See, e.g., *In re Pantages* (1930) 209 Cal. 535, 536-537 [291 P. 831]; *In re Ward* (1900) 127 Cal. 489, 490 [59 P. 894]; *Ex Parte Smallman* (1879) 54 Cal. 35, 36.)

In *In re Brumback* (1956) 46 Cal.2d 810, 814-815 [299 P.2d 217], however, our court specifically disavowed the "extraordinary circumstances" standard, recognizing that the rigid limitation on bail on appeal which such a standard imposed found no support in the explicit statutory language. The *Brumback* court held instead that the "discretion" authorized by section 1272 "is a sound legal discretion to be exercised in light of all attending circumstances." (46 Cal.2d at p. 813.) Accordingly, since *Brumback,* the rule has been clear that under section 1272 no presumption against release on appeal arises, and that such release should not be reserved for the "extraordinary" case.[8]

■ The *Brumback* decision additionally provides guidance as to the specific matters which a trial court should consider in determining whether to release a defendant pending appeal. The *Brumback* court emphasized that a trial judge "should recognize that the primary purpose of bail, before or after conviction, is practical assurance that defendant will attend upon the court when his presence is required." (46 Cal.2d at p. 813.) As numerous out-of-state authorities indicate, a multiplicity of factors relate to the likelihood that an individual defendant will "jump bail": (1) the defendant's ties to the community, including his employment, the duration of his residence, his family attachments and his property holdings; (2) the defendant's record of appearance at past court hearings or of flight to avoid prosecution; and

---

[8]Most of the "extraordinary circumstances" precedents involved seriously ill defendants who claimed that their health would be gravely jeopardized if they were required to remain in prison pending appeal. (See, e.g., *In re Pantages, supra,* 209 Cal. 535, 537-538; *In re Ward, supra,* 127 Cal. 489, 489-490.) In abandoning the "extraordinary circumstances" standard as a definitive test, the *Brumback* court did not, of course, rule that such medical emergencies or similar extraordinary situations would not justify a grant of bail on appeal; on the contrary, the decision simply declared that release on appeal is not to be limited to such extraordinary cases. Similarly, nothing in the instant opinion proposes to preclude either trial or appellate courts, in determining whether to permit release on appeal, from giving consideration to such extraordinary circumstances.

(3) the severity of the sentence defendant faces. (See, e.g., *Harris* v. *United States* (1971) 404 U.S. 1232, 1236 [30 L.Ed.2d 25, 29, 92 S.Ct. 10]; *Cohen* v. *United States* (1961) 7 L.Ed.2d 13 [82 S.Ct. 8, 9]; *Bandy* v. *United States* (1960) 5 L.Ed.2d 218 [81 S.Ct. 197, 198]; cf. 18 U.S.C. § 3146(b).)[9] If a defendant can demonstrate that the likelihood of his flight is minimal in light of these criteria, he should be considered as having presented at least a prima facie case for release pending appeal. (See Molinari, *Bail Pending Appeal in California* (1967) 1 U.S.F.L.Rev. 217, 224.)

Past California decisions additionally make clear, however, that the likelihood of flight is not the only factor that a court may properly consider in deciding whether to release a felon pending appeal. In *In re Scaggs, supra,* 47 Cal.2d 416, 419, we noted that another "important consideration is whether there is any danger that, if released, [the defendant] would continue to commit crime." Defendant in the instant case asserts that any consideration of the "potential danger" of a convicted defendant is precluded by this court's recent decision in *In re Underwood, supra,* 9 Cal.3d 345. As we have already pointed out, however, *Underwood* simply holds that under the California Constitution a defendant charged with a non-capital crime may not be denied preconviction bail on the ground that he poses a danger to the community; *Underwood* specifically notes that a different rule prevails with respect to bail on appeal. (9 Cal.3d at p. 347, fn. 1; accord *Banks* v. *United States* (1969) 414 F.2d 1150, 1152 [134 App.D.C. 254].)

Although *Underwood* does not support the contention that a defendant's potential "danger to the community" can never be considered in determining release pending appeal, we think that *Underwood* does have some relevance to the manner in which the "danger to the community" criterion should be applied in this context. In *Underwood* we noted that considerable questions had been raised concerning the ability of courts to predict future criminal conduct (9 Cal.3d at p. 349, fn. 5); in *People* v. *Burnick* (1975) 14 Cal.3d 306, 325-328 [121 Cal.Rptr. 488, 535 P.2d 352], we recently acknowledged similar uncertainties with

---

[9]Aside from its relevance to the defendant's "likelihood of flight," the length of the defendant's sentence may be considered by the court in determining whether there is a serious danger that defendant's term will be served before his appeal is heard. In light of the strong interest in preventing the vitiation of a defendant's right of appeal, several courts have found an abuse of discretion when trial courts have denied bail on appeal after sentencing the defendant to a term which is equivalent to a misdemeanor sentence. (See *In re McCaughan* (1956) 142 Cal.App.2d 690, 692-693 [298 P.2d 871]; *In re Torres* (1947) 80 Cal.App.2d 579, 581 [182 P.2d 573]; cf. *Ex Parte Hoge, supra,* 48 Cal. 3, 6.)

respect to the accuracy of comparable predictions made by those who are ostensibly "expert" in the predictive field. Although predictive inquiry may become more manageable once a defendant has in fact been convicted of a criminal act, we believe nonetheless that courts should be somewhat cautious in basing a denial of bail on the alleged dangerous propensities of the defendant. (See, e.g., *Harris* v. *United States, supra,* 404 U.S. 1232, 1236 [30 L.Ed.2d 25, 29]; *Sellers* v. *United States* (1968) 21 L.Ed.2d 64 [89 S.Ct. 36, 38].) When the pattern of a particular defendant's history indicates that additional criminal conduct will probably ensue if the defendant is released, however, a court unquestionably retains the authority to deny release on appeal. (See *In re Scaggs, supra,* 47 Cal.2d at p. 419; *Carbo* v. *United States* (1962) 7 L.Ed.2d 769 [82 S.Ct. 662, 666, 668-669]; *United States* v. *Wilson* (2d Cir. 1958) 257 F.2d 796, 797.)[10]

■ Finally, inasmuch as the statutory provision for bail on appeal has as its basic purpose the full effectuation of a defendant's right to appeal his conviction, a court may, in its discretion, decline to grant such release if it determines either that the appeal is wholly frivolous or that the defendant is not diligently prosecuting his appeal.[11] In this regard, however, a court should not require as a prerequisite to release that the appeal actually appear meritorious (see *Ex Parte Hoge, supra,* 48 Cal. at pp. 6-7); instead, denial of release on these grounds is only justifiable if "the appeal is so baseless as to deserve to be condemned as frivolous or is sought as a device for mere delay." (*Ward* v. *United States* (1956) 1 L.Ed.2d 25, 27 [76 S.Ct. 1063, 1065].)

---

[10] We add one further caveat. In evaluating the dangerous propensities of a particular defendant, a court will of course consider the nature of the crime of which defendant has been convicted, as well as the nature of any prior convictions; the more serious the defendant's record, the greater the justification for denying release on appeal. In determining the question of future danger, however, a court should look to the circumstances of the particular defendant, and should not adopt an ironclad, mechanical policy of denying bail to all who commit a particular crime. (See *Fiano* v. *United States* (9th Cir. 1958) 259 F.2d 135, 137; accord *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Minnis* (1972) 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997].)

[11] Courts have long recognized that a potential danger accompanying the granting of bail on appeal is that "[t]oo frequently, after the defendant has been admitted to bail, his interest apparently lags, the appeal drags, the bill of exceptions is not promptly settled and the record does not reach the appellate court as promptly as it should." (*United States* v. *St. John* (7th Cir. 1918) 254 F. 794, 798.) A trial court may in its discretion forestall such dilatory tactics by withholding release until the defendant has filed a notice of appeal, and by periodically reviewing the matter to ensure that defendant diligently perfects the record on appeal and timely files the required briefs on appeal. (See, e.g., *McKnight* v. *United States* (6th Cir. 1902) 113 F. 451, 453-454.) Whenever a lack of diligence appears, the grant of release on appeal may be revoked. (See, e.g., *In re Schriber* (1911) 19 Idaho 531, 536 [114 P. 29, 30].)

 In applying the foregoing criteria, "[i]t is settled that the primary discretion belongs to the trial judge . . . [and] [w]here the trial judge has passed upon the merits of the application his ruling will not be disturbed unless a manifest abuse of discretion appears [citations]. . . ." (*In re Brumback, supra,* 46 Cal.2d 810, 813-814.) Although a trial court's exercise of discretion is thus clearly subject to a limited review in the appellate courts, such review in the past has been largely frustrated because trial courts have not been required to articulate their reasons for denying an application for release pending appeal.

On a number of occasions in recent years, this court has emphasized that meaningful judicial review is often impossible unless the reviewing court is apprised of the reasons behind a given decision. In *In re Sturm* (1974) 11 Cal.3d 258, 268-270 [113 Cal.Rptr. 361, 521 P.2d 97], for example, we concluded that the demands of procedural due process required the Adult Authority to support its decision denying a prisoner parole with a statement of reasons. Similarly, in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 513-518 [113 Cal.Rptr. 836, 522 P.2d 12], we concluded as a matter of statutory interpretation that written findings were necessary to permit meaningful review of quasi-judicial administrative decisions. And, most recently, in *Juan T.* v. *Superior Court* (1975) 49 Cal.App.3d 207, 210-211 [122 Cal.Rptr. 405], the Court of Appeal reached an analogous conclusion, holding that the juvenile court must "state its reasons [when it finds] that a minor is not a fit and proper subject for treatment under the juvenile court law." (See, e.g., *In re Bye* (1974) 12 Cal.3d 96, 110 and fn. 14 [115 Cal.Rptr. 382, 524 P.2d 854]; *Kent* v. *United States* (1966) 383 U.S. 541, 561 [16 L.Ed.2d 84, 97, 86 S.Ct. 1045].)

As these authorities suggest, a requirement of articulated reasons to support a given decision serves a number of interests. In the first place, as we have noted, the statement of such reasons will frequently be essential to any meaningful review of the decision. Secondly, a requirement of articulated reasons acts as an inherent guard against the careless decision, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision. Finally, articulated reasons aid in preserving public confidence in the decision-making process "by helping to persuade the parties [and the public] that . . . decision-making is careful, reasoned and equitable." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 517.)

In view of all these considerations, we hold, pursuant to our supervisory authority over state criminal procedure (see, e.g., *People* v. *Vickers* (1972) 8 Cal.3d 451, 461 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513]), that trial courts *in the future* should render a brief statement of reasons in support of an order denying a motion for bail on appeal. (Cf. *Febre* v. *United States* (1969) 396 U.S. 1225 [24 L.Ed.2d 48, 90 S.Ct. 19]; Fed. Rules of Appellate Proc., rule 9(b).) Such a statement need not include conventional findings of fact; all that is required "is that the basis for the order be set forth 'with sufficient specificity to permit meaningful review.' " (*People* v. *Browning* (1975) 45 Cal.App.3d 125, 137-138 [119 Cal.Rptr. 420] (quoting *Kent* v. *United States* (1966) 383 U.S. 541, 561 [16 L.Ed.2d 84, 97, 86 S.Ct. 1045]).)

As noted above, the trial court in the instant case did not purport to give a full statement of its reasons for denying defendant's motion for bail on appeal. Although the court mentioned several factors which apparently influenced its determination, we doubt that such reasons could properly support a denial of release under the applicable standards discussed above.[12] ▆▆ In any event, although this opinion's requirement of a statement of reasons accompanying orders denying release on appeal is to be applied prospectively only, considerations of fairness convince us that the present defendant is entitled to the benefits of this ruling. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829-830 [119 Cal.Rptr. 858, 532 P.2d 1226]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].) Accordingly, although we decline to release defendant at this time, our denial of habeas corpus relief is specifically without prejudice to defendant's right to file a new application for bail on appeal with the superior court,

---

[12]As discussed in footnote 3, *ante*, the trial court indicated that the denial of bail on appeal was grounded in part on the fact that defendant's pretrial petition for writ of mandamus had been denied. The Attorney General now concedes that this fact does not constitute an appropriate basis for the denial of bail; as this court has held, the denial of a pretrial writ without opinion is not to be construed as a ruling on the merits (see *People* v. *Medina* (1972) 6 Cal.3d 484, 490-492 [99 Cal.Rptr. 630, 492 P.2d 686]), and, in light of several published Court of Appeal opinions (see fn. 2, *ante*), defendant's appeal certainly cannot be characterized as frivolous.

The trial court also made a somewhat obscure reference to the "threat involved" in this case. (See fn. 3, *ante*.) It is not at all clear from the record whether this purports to be a determination that the release of defendant would pose a danger to society in the future. Moreover, even if this were the case, some question arises whether the trial court reached its determination as an independent, individual matter or relied solely on the nature of the defendant's narcotics offense. From the probation report before us, it appears that the trial court may have relied on the latter improper analysis. (See fn. 10, *ante*.)

which application is to be determined in accordance with the views expressed herein.

The order to show cause, having served its purpose, is discharged, and the writ of habeas corpus is denied.

Wright, C. J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I dissent from requiring the trial judge to state his reasons for denying bail on appeal. Judicial action—not judicial motivation—is the proper subject for appellate review. (*Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304, 315 [139 P.2d 13]; *People* v. *Lang* (1974) 11 Cal.3d 134, 143 [113 Cal.Rptr. 9, 520 P.2d 393] (Clark, J., dissenting).) " 'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr.786, 520 P.2d 10], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

Disregarding this well-established rule, the majority require the trial court not only to act properly but also to give the "right" reasons for its action. There being no inherent reason to limit this new standard of appellate review to orders denying bail on appeal, the exception announced today may be expected to swallow the rule tomorrow.

The cases the majority rely on are inapposite. As they observe, "in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 513-518 [113 Cal.Rptr. 836, 522 P.2d 12], we concluded as a matter of statutory interpretation that written findings were necessary to permit meaningful review of quasi-judicial administrative decisions." *(Ante,* p. 937.) The majority require a statement of reasons here, not as a matter of statutory interpretation, but rather as an exercise of our supervisory power over state criminal procedure. *(Ante,* p. 937.) Moreover, we here review an order made by the superior court, not a decision of a quasi-judicial administrative agency.

In *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97], the following grounds were given for requiring the Adult Authority to state its reasons for denying parole: "First, there is little inherent guard against careless decisions in the absence of a statement of reasons, especially in view of the Authority's tremendous caseload. Second, inmates may be denied the opportunity to formulate a persuasive application for relief if they are unaware of the reasons why parole was denied. Finally, courts may find review impossible without ordering an evidentiary hearing if the record of the action taken by the Authority is inadequate." (11 Cal.3d at p. 270; citations omitted.) Another ground given for requiring a statement of reasons in denying parole was to enable the prisoner to " 'appropriately adjust his future conduct.' " (*Id.,* at p. 270, fn. 14.)

Assuming arguendo that the circumstances of a typical parole hearing are conducive to "careless decisions," motions for bail on appeal are not considered under such circumstances. A parole hearing usually lasts no more than 10 minutes because the panel must hear approximately 25 cases a day; while one of the two panel members conducts the brief hearing, the other reads the file for the next case. (*In re Sturm, supra,* 11 Cal.3d at p. 262.) By contrast, the superior court acts on a motion for bail on appeal after considering the evidence resulting in conviction, the probation and sentence report, and other evidence pertinent to the motion. Moreover, the considerations pertinent to a motion for bail on appeal being well-established, a statement of reasons for denial of the motion is not required to enable the defendant to prepare a "persuasive application for relief." It is the defendant's responsibility to present all relevant evidence to the trial court in support of his motion *(ante,* p. 928, fn. 4), as it is the People's responsibility to present all relevant evidence in opposition thereto (Molinari, *Bail Pending Appeal in California* (1967) 1 U.S.F.L.Rev. 217, 221). Therefore, if the parties discharge their responsibilities, the record will be adequate for appellate review. Finally, a statement of reasons for denial of a motion for bail on appeal, unlike an application for parole, is not required as a guideline for rehabilitation.

The trial judge's ruling on a motion for bail pending appeal is not to be disturbed unless a "manifest abuse of discretion" appears. (*In re Brumback* (1956) 46 Cal.2d 810, 813 [299 P.2d 217].) No such abuse appears here.

The trial court's action here is supported by the record, particularly, the probation report. Denial of probation was recommended on the following ground: "[D]efendant's involvement in the transporting of such a large quantity of marijuana [85 pounds, having an estimated "street value" of $11,000] is an integral part of the drug distribution operation and . . . poses a *serious threat to the community* . . . ." (Italics added.) Defendant expressly admitted to the parole officer that he knew the marijuana was in the trunk of his car, that his sole motivation for agreeing to transport it was monetary gain, and that he was paid a "great deal of money" for transporting it because of the dependability of his new car and his knowledge of the area. Moreover, defendant told the parole officer that "he could reveal more about his drug connections, but that it would be detrimental to his life."

Defendant's guilt being admitted, the "danger to the community" posed by his criminal conduct being manifest, the remaining question is whether the record supports the trial court's conclusion that there was an unacceptably high risk that defendant would continue to traffic in drugs while on bail pending appeal. (See *In re Scaggs* (1956) 47 Cal.2d 416, 419 [303 P.2d 1009].) The record does support that conclusion. Only seven months earlier defendant had been arrested for possession of marijuana. On that occasion his involvement with drugs was adjudged sufficiently minimal to qualify him for "diversion." (See generally *People* v. *Superior Court (On Tai Ho)* 11 Cal.3d 59 [113 Cal.Rptr. 21, 520 P.2d 405].) In the interim, he had become so deeply involved that, according to his own statement, his life was in danger. Moreover, there was no indication that the economic necessity allegedly motivating his involvement in drug trafficking had abated since his most recent arrest.

I would deny the writ with prejudice.

McComb, J., concurred.

Respondent's petition for a rehearing was denied February 26, 1976, and the opinion was modified to read as printed above. Clark, J., was of the opinion that the petition should be granted.