**Roland Carl SHELVY, Appellant,**

v.

**Salanda WHITFIELD, et al.**

**No. 82–1921.**

United States Court of Appeals, District of Columbia Circuit.

Calendared April 27, 1983.

Submitted Sept. 1, 1983.

Decided Sept. 16, 1983.

---

**170.** *See* RI 368 & 369.

**442**

Roland Carl Shelvy, on brief, pro se.

Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher, and Daniel S. Seikaly, Asst. U.S. Attys., Washington, D.C., on brief, for appellees.

A. Franklin Burgess, Jr., (appointed by this court) and Robert P. Mosteller, Washington, D.C., on brief, for amicus curiae urging reversal.

Before GINSBURG and SCALIA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

Dissenting opinion filed by Senior Circuit Judge BAZELON.

GINSBURG, Circuit Judge:

■ This case concerns the calculation of credit for presentence time spent in custody. Petitioning for a writ of habeas corpus, Roland Shelvy claimed that he should receive, in addition to the 233 days of credit allowed by the District of Columbia Department of Corrections, a further credit of approximately six months. The district court denied Shelvy's application; it held that the statute governing presentence

credit, 18 U.S.C. § 3568, does not permit the relief Shelvy seeks.[1] We affirm the district court's judgment. Our holding rests on two interrelated conclusions. Both grounds of decision stem from a principal objective of Congress in enacting 18 U.S.C. § 3568: to "remove confusion," "produce certainty," and "prevent juggling" as to the date on which a sentence commences. See S.Rep. No. 803, 72d Cong., 1st Sess. 2 (1932); H.R. Rep. No. 960, 72d Cong., 1st Sess. 2 (1932).

■ First, we conclude that credit for presentence time spent in custody against one or more eventual sentences continues until a defendant commences service of a sentence; but once a defendant actually commences service of a sentence, *presentence* credit ceases. Upon the prisoner's reception at the institution for service of that sentence, or commitment to a place of detention to await transportation to the place at which the sentence shall be served, other pending charges do not extend the prisoner's eligibility for credit for time spent in custody prior to the imposition of a sentence. Second, we conclude that a second sentence ordered to run concurrently with a sentence earlier imposed runs with *the remainder* of the earlier sentence.

I.

Shelvy was charged, held in presentence custody, and eventually sentenced in two separate proceedings. He was arrested on September 24, 1969, on charges of armed robbery, robbery, and two counts of assault with a dangerous weapon (case 1). He alleges that on the same day, he was also arrested and charged with murder (case 2).[2] Shelvy has remained incarcerated since his arrest.

---

1. Citing *Preiser v. Rodriguez*, 411 U.S. 475, 486–88, 93 S.Ct. 1827, 1834–35, 36 L.Ed.2d 439 (1973), the district court noted that although granting Shelvy's application would not result in his immediate release from confinement, a habeas corpus petition appears to be an available means to seek the requested relief.

2. Respondents stated that prison records indicated October 31, 1969, as the date of Shelvy's commitment on the murder charge. The district court assumed, for purposes of ruling on Shelvy's petition, that commitments in both cases occurred on September 24, 1969. See *Shelvy v. Whitfield*, No. 82–1555, slip op. at 1 n. 1 (D.D.C. July 30, 1982). We make the same assumption.

Case 1 was tried before a jury on March 11, 1970. Shelvy was found guilty on three counts. On May 15, 1970, he was sentenced to imprisonment for six to eighteen years for armed robbery, and two to six years on each of the assault counts. These sentences were ordered to run concurrently.

In case 2, Shelvy entered a plea of guilty to second degree murder on October 13, 1970. On November 20, 1970, he was sentenced to the maximum term authorized for this offense, imprisonment for fifteen years to life.[3] The district judge ordered the sentence to run concurrently with any sentence then being served.

Shelvy has received credit against both sentences for the period between September 24, 1969, the date of his arrest, and May 15, 1970, the date he was sentenced in case 1. Despite commencement of the case 1 sentence on the latter date, Shelvy claims he is entitled to presentence credit in case 2 for the period from May 15, 1970, until November 20, 1970, the date on which the case 2 sentence commenced. In effect, he urges that we hold both sentencing dates irrelevant, and direct that he receive credit against the longer sentence—the one in case 2—for every day he has been incarcerated since his arrest on September 24, 1969.

## II.

The statute controlling credit for time spent in custody prior to the imposition of sentence provides, in relevant part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in

custody *in connection with the offense or acts for which sentence was imposed. . . .*

> . . . .

> No sentence shall prescribe any other method of computing the term.

18 U.S.C. § 3568 (emphasis added). The district court held that the underscored language foreclosed Shelvy's claim:

> [F]rom May 15[, 1970,] on, the petitioner was incarcerated pursuant to his sentence in case 1; this being so, [he] was not spending [that time] in custody "in connection with the offense in [case 2]" and, hence, he is not entitled to credit for this time served.

*Shelvy v. Whitfield,* No. 82–1555, slip op. at 2 (D.D.C. July 30, 1982).

We recognize the force of the district court's position. However, Shelvy's case has an anomalous aspect: If the two sentence dates had been interchanged—the case 2 (murder) sentence imposed on May 15, 1970, the case 1 (robbery) sentence on November 20, 1970—it appears that Shelvy would have been entitled to the six months credit he seeks. He would have received credit for presentence custody up to May 15, 1970, and for service of the case 2 sentence thereafter. In this hypothetical situation, there would have been no need to answer the question whether credit should have accrued against the case 1 sentence during the period May 15, 1970, to November 20, 1970, for the absence of credit would have had no effect on the total period of incarceration; the case 1 sentence, six to eighteen years, even with no credit gained from May 15, 1970, to November 20, 1970, if ordered to run concurrently with the case 2 sentence, would have fit entirely within the latter, fifteen years to life, sentence.

Shelvy appeared pro se in the district court and on appeal. Because we believed he might have an arguable point, we invited

**3.** Murder in the second degree, defined in D.C. Code § 22–2403, is punishable by imprisonment "for life or not less than 20 years." D.C. Code § 22–2404. However, D.C.Code § 24–203, the Indeterminate Sentence Act, provides that a maximum sentence of life imprisonment must be accompanied by a minimum sentence not to exceed 15 years imprisonment. Thus

Shelvy's term was 15 years to life. Had the trial judge sentenced Shelvy to the lightest sentence permissible under § 22–2404, *i.e.,* 20 years, § 24–203 would have made him eligible for parole in 6⅔ years. *See Frady v. United States Bureau of Prisons,* 570 F.2d 1027, 1028–29 (D.C.Cir.1978) (quoting H.R.Rep. No. 677, 87th Cong., 1st Sess. 2 (1961)).

the Public Defender Service to assist the court by submitting a brief, amicus curiae. That brief cogently points out that because Shelvy's sentence in case 1 is totally subsumed within the considerably longer, concurrently running sentence in case 2, credit against the case 1 sentence, for all practical purposes, is meaningless. Credit against that sentence alone cannot shorten the time Shelvy will spend in prison.

### III.

We are impelled to agree with the district court that Shelvy is not entitled to any additional "credit for time [he spent] in custody *prior* to the imposition of sentence." *See* 18 U.S.C. § 3568 (caption) (emphasis added). First, the section in question fixes the time when a sentence commences. Beyond debate, Shelvy commenced serving a sentence on May 15, 1970. Next, the section provides for *presentence* credit. Congress has consistently described this provision as aimed at credit for confinement *before and during trial,* and not at credit for any post-sentence custody. *See* S.Rep. No. 750, 89th Cong., 1st Sess. 21 (1965) (amendments extending section 3568 to nonbailable offenses and lifting its limitation to statutes with minimum mandatory sentences were designed to "guarantee[ ] credit for pretrial custody"); H.R.Rep. No. 2058, 86th Cong., 2d Sess. 1 (1960) (purpose of amendment to section 3568 "is to make clear that the defendant receives credit for time spent in custody not only prior to trial

but during the trial," and "also to exclude credit for time spent in custody after sentence, such as while on appeal"). Once a sentence is imposed and becomes operative for the period of time at issue, it is artificial to maintain that custody nonetheless retains its preconviction character, that it remains conditional, unsettled, still dependent upon (and therefore "in connection with") a trial court's eventual disposition of other charges not yet adjudicated.[4]

Moreover, were we to read 18 U.S.C. § 3568 as authorizing presentence credit for time a prisoner serves *after* the imposition of a first sentence, we would alter the instruction a trial judge signals when he or she orders that the sentence imposed shall run concurrently with any sentence then "being served." For example, assume a trial judge imposed a one-year sentence on a defendant and ordered it to run concurrently with a one-year sentence then being served, eight months of which had elapsed. We have little doubt that the sentencing judge in such a case would envision a second sentence outlasting the first by eight months. Precedent in point confirms that a federal sentence made concurrent with a sentence already being served does not operate in a "fully concurrent" manner. Rather, the second sentence runs together with *the remainder* of the one then being served. *See United States v. Flores,* 616 F.2d 840, 841 (5th Cir.1980); *Wilson v. Henderson,* 468 F.2d 582, 584 (5th Cir.1972).[5]

---

**4.** The position that presentence credit does not include time spent serving another sentence is announced in instructions for administrative determinations of jail-time credit under 18 U.S.C. § 3568, *see* United States Department of Justice, Federal Prison System Program Statement No. 5880.24, para. 5.b.(2) (Sept. 5, 1979), and is reflected in prior court rulings. *See O'Connor v. Rodgers,* Habeas Corpus 233–68, *aff'd,* No. 22,853 (D.C.Cir. June 24, 1970) (noting that Chief Judge Bazelon would remand the case for clarification of the trial judge's intention in the imposition of the concurrent sentences). We do not attribute precedential value to this court's unpublished disposition. *See* D.C.Cir.R. 8(f). We simply note, in view of the dissent's reading of the statute, that on a prior occasion, after full consideration, the court determined that the issue occasioned no need for an opinion. *See* D.C.Cir.R. 13(c).

**5.** In *Flores,* the defendant was sentenced, after conviction, to ten years on one drug offense on February 12, 1976, and, after a plea of guilty, to ten years on another drug offense on December 13, 1976, the latter sentence " 'to run concurrently with the sentence imposed [in the first case].' " 616 F.2d at 841. He sought, unsuccessfully, to vacate the second sentence, urging that he had entered the guilty plea on the misapprehension that the sentence would be considered to begin and terminate on the same dates as the prior sentence, and that his counsel had labored under the same misapprehension. The court held this erroneous construction of the meaning of a concurrent sentence insufficient to invalidate the plea bargain.

In *Wilson,* the defendant sought credit for 155 days actually served on a sentence imposed by the District Court for the District of Colum-

In his pro se brief, Shelvy correctly points out that the presentence credit for which 18 U.S.C. § 3568 provides is responsive to the situation of a person held in custody because of inability to make bail. *See* Brief for Appellant at 2. The current statute covers such cases and more. It applies to incarceration prior to the imposition of any sentence where the person is charged with a nonbailable offense or is not released pre-sentence for some other reason, for example, where a person is initially detained as a juvenile but later tried as an adult.[6] Indeed, if the statute limited credit to days spent in custody because of inability to make bail, it appears that Shelvy would not have an arguable case even for the credit accorded him. Jail records indicate that, while Shelvy was held in lieu of a money bond in case 1, the armed robbery case, he was held without bond in case 2, the murder case. *See* Brief for Amicus Curiae at 1. We therefore find unpersuasive the central assertion in Shelvy's pro se brief that he was the victim of invidious discrimination because of his poverty.

The brief for amicus curiae suggests that we could grant "meaningful credit against the total period of [Shelvy's] confinement," and preclude the order of the two sentences from affecting the total time he serves, by "interrupt[ing] the running of [the sentence in case 1]" and "making it commence six months later on November 20, 1970." Brief for Amicus Curiae at 20.[7] But the opening statement in 18 U.S.C. § 3568 provides:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.

The concluding sentence of the section states:

No sentence shall prescribe any other method of computing the term.

Setting out the relevant legislative history, this court observed that Congress dominantly intended to provide "a firm date of sentence commencement." *United States v. Liddy,* 510 F.2d 669, 674 (D.C.Cir.1974) (en banc), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975). The court in *Liddy* recognized authority in the district court to interrupt a sentence once it has commenced and thereby *postpone the termination date of the sentence* "beyond the time the sentence would have ended had it not been interrupted." *Id.* We confront no such situation here. Neither district court order nor statute authorizes the interruption amicus suggests. We therefore have no warrant to treat the case 1 sentence as commencing six months after Shelvy was committed to a place of detention to await transportation to the penitentiary designated for service of that sentence.

Nor, in face of specific congressional instruction to the contrary, are we at liberty

bia against a longer sentence subsequently imposed by the District Court for the Southern District of New York and ordered to run concurrently with the District of Columbia sentence the defendant was then serving. Credit was denied on the ground that a sentence cannot commence prior to the date it was pronounced even if it is to be served concurrently with a sentence already being served. 468 F.2d at 584. As in the case before us, the defendant in *Wilson* was awarded credit against both sentences for the period he spent in federal custody (204 days) prior to the first, District of Columbia, sentence. *Id.* at 583.

6. *See* S.Rep. No. 750, 89th Cong., 1st Sess. 21 (1965) (nonbailable offenses); Federal Bail Procedures: Hearings on S. 2838, S. 2839, S. 2840 Before the Subcomm. on Constitutional Rights

and the Subcomm. on Improvements in Judicial Machinery of the Comm. on the Judiciary, 88th Cong., 2d Sess. 135–36 (1964) (juveniles-tried-as-adults and nonbailable offenses).

7. At our request, amicus curiae's brief centered on this question: "Given the fact that Mr. Shelvy would have received the six months credit he now seeks had the sentencing dates been reversed, does 18 U.S.C. § 3568 require a different result because the sentence in the robbery case came first?" Brief for Amicus Curiae at 6. The brief is a careful, comprehensive development of the arguments in support of six months additional credit for Shelvy. The dissent considers "essential" further supplemental briefing and argument. Dissent at 448. Yet it cites not a single decision that even squints in support of a different outcome in Shelvy's case.

to regard the case 2 sentence as "commenc[ing] to run from some date prior to the sentence or some date before [Shelvy] actually commence[d] [its] service." *See* S.Rep. No. 803, *supra,* at 2; H.R.Rep. No. 960, *supra,* at 2. Moreover, even if we were to ignore the concern of Congress embodied in 18 U.S.C. § 3568 to "prevent juggling with sentences," *id.,* and entertain the notion that "a sentencing judge has the discretion to provide that a sentence is to be retroactively concurrent with another sentence which has already been served," it is evident that "no such order was made in this case." *See United States ex rel. Del Genio v. United States Bureau of Prisons,* 644 F.2d 585, 589 (7th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 870, 66 L.Ed.2d 808 (1981) (rejecting petitioner's argument that a later sentence, ordered to run concurrently with an earlier one, should be treated as having commenced prior to the date it was imposed).

Shelvy's case 2 sentence, as pronounced, runs concurrently with the case 1 sentence then *being served.* No statute authorizes us to amend that direction so that the sentence in case 2 not only runs concurrently with the remainder of the sentence in case 1, but *is shortened by the time already elapsed* on the prior sentence.[8] The anomaly that Shelvy would have been entitled to consideration for release six months earlier had he been sentenced on the case 2 charge first is no more curious than the one suggested by respondents:[9] had Shelvy been charged in case 2 the day after imposition of the sentence in case 1, none of his presentence detention would have served to reduce the period of his incarceration; he would not have received effective credit

even for the 233 days between arrest and first sentencing.[10]

CONCLUSION

■ We conclude that Shelvy is entitled to presentence credit only for days of incarceration during which he was not serving any sentence. He has received full credit for those days. We can accord him no more without straining the meaning of 18 U.S.C. § 3568 and departing from judicial understanding and precedent on what a "sentence to run concurrently with an earlier sentence" means. Therefore, the judgment from which this appeal has been taken is

*Affirmed.*

BAZELON, Senior Circuit Judge, dissenting:

The majority opinion rests on two conclusions: 1) that the imposition of the sentence in the first case was the sole basis for Shelvy's incarceration from May 15 to November 20, 1970, and 2) that a subsequent sentence ordered to run concurrently with an earlier sentence can only run with the unexpired portion of the earlier sentence. Because I believe that the first conclusion is incorrect and the second reaches an issue that was never addressed by the parties, I must dissent.

I. CREDIT UNDER 18 U.S.C. § 3568

The relevant statute awards credit for time spent in custody "in connection with the offense or acts for which sentence was imposed."[1] Shelvy was arrested on both charges on the same day. It is undisputed that before the imposition of the first sentence, Shelvy was being held "in connection with" *both* criminal charges.[2] The majority

---

**8.** No doubt "judicial power," *see* dissent at 448, existed to render Shelvy eligible for parole earlier. The sentencing judge in case 2 could have shortened Shelvy's second degree murder sentence. *See supra* note 3. Instead, in face of contemporaneous interpretation of 18 U.S.C. § 3568, *see supra* note 4, and extant administrative procedures for computing jail-time credit, he sentenced Shelvy to the statutory maximum.

**9.** Brief for Respondent-Appellees at 6.

**10.** The days would have been credited against the sentence in case 1, but there would have been no presentence credit at all against the considerably longer sentence in case 2.

**1.** 18 U.S.C. § 3568 (1976).

**2.** Indeed, Shelvy was granted credit against both sentences for the period between his arrest and the first sentence. Majority opinion (Maj. op.) at 443.

holds, however, that between the imposition of the first and second sentences, the first sentence was the sole effective cause of Shelvy's continued incarceration. In the majority view, the second charge became irrelevant; his custody was only "in connection with" the criminal sentence, and not "in connection with" the pending charge.[3]

In most criminal cases that are appealed, however, the imposition of a sentence does *not* mandate immediate imprisonment. Convicted criminal defendants are ordinarily released on bond and their sentences are stayed pending resolution of their appeals.[4] Shelvy did pursue an appeal. Had Shelvy been granted and been able to make bail, he would have been free for the six months at issue in this case. But bail was not even a possibility for Shelvy. As the majority correctly points out, "while Shelvy was held in lieu of a money bond in case 1, the armed robbery case, he was held without bond in case 2, the murder case."[5] Just as the second, nonbailable charge foreclosed release on the first charge *prior* to the first conviction, so too the second charge foreclosed release *after* the first conviction. In both situations, the second charge was fully sufficient to hold Shelvy; the first was not either before or after conviction. Shelvy could have been released on the conviction; he could not have been freed on the second charge. It therefore is illogical for the majority to conclude that Shelvy was in custody only "in connection with" the first charge and not "in connection with" the second.

Given that the second charge effectively precluded possible release on the first conviction, it is inescapable that, at the very least, Shelvy was held "in connection with"

*both* the sentence and the second charge from May 15 to November 20, 1970. The government concedes that Shelvy was held from his arrest until the May 15 sentencing on *both* charges. It is similarly undisputed that Shelvy was held on *both* convictions after the November 20, 1970 sentencing. In view of the second charge's prevention of post-conviction release, I cannot agree that the imposition of the first sentence could make the second charge a nullity for six months, after which it could arise again to serve as a cause of confinement. Shelvy was held "in connection with" the second charge from his arrest until the second conviction. Under 18 U.S.C. § 3568, he should receive credit against the second sentence for this entire period.

Granting the credit requested would not require an alteration in the operation of the concurrent sentences. The statute directs the Attorney General to give a prisoner "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed."[6] Since Shelvy was held "in connection with" the second charge, as well as the first sentence, he is entitled to an administrative credit against the second sentence. The awarding of this credit would not require post-dating the first sentence or back-dating the second. It would merely oblige the Attorney General to credit an additional six months of presentence custody against the second sentence.

II. OPERATION OF CONCURRENT SENTENCES

Having assumed that alteration of the concurrent sentences would be necessary, the majority grounds its holding on its con-

---

**3.** *See* maj. op. at 444.

**4.** *See* 3A C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 767 at 122 (1982); *Harris v. United States,* 404 U.S. 1232, 1232, 92 S.Ct. 10, 12, 30 L.Ed.2d 25 (Douglas, Circuit Justice, 1971) (post-conviction bail may be denied "only for the strongest of reasons" (quoting *Sellers v. United States,* 89 S.Ct. 36, 21 L.Ed.2d 64 (1968))); *Leigh v. United States,* 82 S.Ct. 994, 996, 8 L.Ed.2d 269 (Warren, Circuit Justice, 1962); *Ward v. United States,* 76 S.Ct. 1063, 1065, 1 L.Ed.2d 25 (Frankfurter, Circuit Justice,

1956); *see also* 18 U.S.C. § 3148 (1976) (release pending appeal should be treated as release prior to conviction unless it appears that (1) appeal is frivolous or dilatory; (2) there is reason to believe that conditions of release will not prevent absconding; (3) there is reason to believe the convicted defendant poses a danger to the community).

**5.** Maj. op. at 445.

**6.** 18 U.S.C. § 3568 (1976).

struction of the proper operation of concurrent sentences.[7] I express no opinion as to the correctness of this construction. I cannot accept, however, the majority's resolution of this vexing and ambiguous legal question given the present posture of this case.

Neither Shelvy, in his *pro se* brief, nor the government, ever addressed this issue.

7. In addition to its finding that no statute authorizes a change in the operation of concurrent sentences, the majority also concludes that even if the sentencing court had that power, it did not exercise it in this case. As discussed below, *infra* note 8, I do not find this conclusion adequately supported.

8. The majority asserts that, had he intended to make Shelvy's sentence "fully concurrent," the sentencing judge would have done so by imposing less than the maximum sentence. Maj. op. at 446 n. 8. Although the intent of the trial judge is not dispositive in this case, the court's inferences as to his intent are nevertheless without adequate bases. It is as possible that he imposed the maximum sentence because of a belief that time already served would be credited. I venture no opinion as to what the sentencing judge did intend in passing sentence; but I think it unwarranted to infer an intention merely from the imposition of the most severe sentence. The "contemporaneous interpretation" of concurrent sentences to which the majority refers, maj. op. at 446 n. 8, was an unpublished order of this court, hardly the sort of authority that we can assume informed the sentencing judge. That unreported case, moreover, was factually distinguishable from this case. *See infra* note 9. In view of the majority's inability to infer the sentencing judge's intent from the record, I must take issue with the majority's finding that "it is evident that no such order was made in this case." Maj. op. at 446.

9. The majority cites an unpublished order of this court, *O'Connor v. Rodgers,* No. 22,853 (D.C.Cir. June 24, 1970), *aff'g* Habeas Corpus 233–68 (D.D.C. Nov. 20, 1968). *See* Maj. op. at 444 n. 4. As the majority correctly notes, an unpublished order cannot be invoked for its precedential value. D.C.Cir.R. 8(f). The majority asserts that it cites this order not to support its position, but to illustrate that its position is so well settled that even an opinion is unnecessary. In view of the majority's assertion, its extended treatment of these purportedly settled issues is puzzling. Moreover, *O'Connor v. Rodgers* is clearly distinguishable on its facts from the instant case. Since the decision is unpublished, some recitation of the facts is necessary to illuminate the differences between the two cases.

Moreover, this panel, although specifying two other questions for briefing, never deemed it necessary to request that amicus address the issue of judicial power to affect the timing of concurrent sentences.[8] Given the dearth of information before us, the absence of precedent in this circuit,[9] and the unilluminating precedents from other circuits,[10] the majority's resolution of this

O'Connor was arrested in case 1 in October, 1964. He made bail and was released. In January, 1965, he was arrested in case 2 and failed to make bail. He remained in custody until May, 1965, when case 2 was dropped. He was convicted in June and sentenced in July of 1965 in case 1. He applied for and was granted appeal bond of $2500 in case 1. On January 10, 1966, he posted the appeal bond and was released. Eleven days later, O'Connor was arrested yet again, in case 3. Bail was set at $3500; he was unable to post this sum and remained incarcerated. He was convicted and sentenced in case 3 on April 25, 1968. The sentence was ordered to run concurrently with the conviction in case 1 nearly three years earlier. O'Connor sought and was denied credit against sentence in case 3 for the time served after his rearrest and failure to post the higher bond in case 3.

Shelvy was arrested on the same day for the two crimes. That the longer sentence was imposed after the shorter sentence was a mere fortuity. O'Connor, however, was arrested for the crime for which he received a longer sentence over a year after the first arrest and six months after he received the first sentence. Indeed, the latter crime had not even been committed when the first sentence was imposed.

Shelvy, in addition, was never given an opportunity to post pre- or post-conviction bond; the second charge at all times kept him unconditionally incarcerated. O'Connor was granted and made bail both before and after his first conviction. Even after his arrest while free on appeal bond, O'Connor was granted bail in case 3. We do not know from the record whether appeal bond was revoked after the case 3 arrest. If it was revoked, then O'Connor's custody on the conviction was unconditional, while custody on the charge in case 3 was conditional. This is precisely the reverse of Shelvy's situation. If O'Connor's appeal bond was not revoked, then custody in both cases was conditional. For Shelvy, custody was at all times conditional in the first case and at all times unconditional in the second case.

10. None of the cases cited by the majority that do construe the meaning of concurrent sentences offers any support or explanation for those constructions. With respect to the Fifth

question is patently premature. Supplemental briefing and argument seem essential to a considered disposition of this case.

---

Circuit cases, *Flores* cites to *Wilson* and *Wilson* reprints a district court order simply asserting that "[a] sentence cannot commence prior to the date it is pronounced even if it is to be concurrent to a sentence already being served." 468 F.2d 582, 584 (5th Cir.1972). *Del Genio* denied the relief requested, but asserts, in dicta, that a sentencing court *could* do what the *Wilson* court said it could not do: make a sentence retroactive. I do not claim that any of the holdings in these cases fail to support the propositions for which they are invoked by the majority. It is abundantly clear, however, that they lack the clarity, consistency, or persuasive reasoning necessary to warrant acceptance in this circuit.