Filed 11/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOHN HARRIS JR., on Habeas Corpus. | A162891 (San Mateo County Super. Ct. No. 21-NF-002568-A) |

Petitioner John Harris Jr. filed this petition for writ of habeas corpus challenging the trial court's decision denying him bail. He argues that (1) the court failed to comply with various standards articulated in *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*); (2) insufficient evidence supported the denial of bail under the standards articulated in *Humphrey* and article I, section 12, subdivision (b) of the California Constitution; and (3) the court abused its discretion in denying bail. He also requests attorney fees and costs pursuant to Code of Civil Procedure section 1021.5. We conclude a remand is necessary because the court erred in failing to set out reasons on the record why less restrictive alternatives to detention could not reasonably protect the government's interests in public or victim safety, and in failing to include those reasons in the minutes.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, now in his mid-fifties, is implicated as the perpetrator of a violent rape that occurred in March 1989. The underlying facts are detailed below.

The victim woke up in her apartment with scarves tied around her ankles. The perpetrator had scarves tied around his own forehead and mouth, and he tied bandanas tightly around the victim's eyes and neck. The perpetrator raped the victim, after which he strangled her and sawed and slashed at her neck with a serrated knife. As the perpetrator struggled with the victim he threatened to cut out her eye and tried to stab her repeatedly in the back but was unsuccessful due to the bluntness of the knife. The victim pleaded with the perpetrator to leave, saying that she would count to 100 before calling the police, but defendant responded that he could not trust her not to call police. She then told him he could unplug the phone to slow her down. Ultimately, the victim managed to convince him to leave. The perpetrator left several scarves behind at the crime scene, including one with a floral design and border. The perpetrator's deoxyribonucleic acid (DNA)— obtained from one of the scarves at the crime scene and a vaginal swab from the victim—was found to match petitioner's.

In February 2021, the People filed a complaint charging petitioner with attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a), 189)[1], and aggravated mayhem (§ 205). As to both counts, the People alleged petitioner used a deadly or dangerous weapon, a knife. As to the attempted murder count alone, the People alleged petitioner inflicted great bodily injury.

The same day the complaint was filed, the trial court appointed counsel and set bail at $5 million. Bail was set despite the fact the probation department submitted a "pretrial services court report" indicating that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

petitioner appeared to be an appropriate candidate for release on his own recognizance with enhanced monitoring.[2]

On April 16, 2021, petitioner filed a bail motion. Relying on *Humphrey*, *supra*, 11 Cal.5th 135, petitioner argued he should be released on his own recognizance because he is indigent, and there is no indication he is a flight or safety risk. Petitioner also contended he was not a risk to public safety because the alleged crimes occurred over 32 years ago; he had not threatened or tried to contact the victim since the alleged crime; and he had a limited criminal history in the interim years. Moreover, he noted, he had community ties and the pretrial services court report indicated he should be released with nonfinancial conditions. Petitioner's attorney filed a declaration in support of the motion stating, on information and belief, that petitioner is indigent and unable to afford bail, as set.

The People opposed the motion and made the following proffers of evidence. In addition to the aforementioned circumstances underlying the offenses, which were recounted by the victim, the doctor who treated the victim after the incident observed that the laceration to her throat was four to five inches long and four to six millimeters deep. Had the cut been " 'a hair more' " it would have severed the victim's jugular and likely caused her death.

---

[2] According to the report, petitioner could not be interviewed due to Covid-19 restrictions but petitioner received a favorable pretrial assessment score based on a calculation of eight factors, i.e., whether he: (1) was on active community criminal justice supervision; (2) had been charged with "felony drug, theft or fraud"; (3) had pending charges; (4) had a criminal history; (5) had two or more failures to appear; (6) had two or more violent convictions; (7) was unemployed at the time of arrest; and (8) had a history of drug abuse. Of these factors, petitioner responded affirmatively only to having a criminal history, and so he scored 2 out of a potential 14 points.

Furthermore, one of petitioner's ex-wives told a prosecution investigator that petitioner kept a collection of scarves in their garage, and that he told her he used them "for tying arms and legs on the posts." One ex-girlfriend told an investigator that petitioner liked to tie her up with scarves and blindfold her, and that their role-playing during sex included his pretending to be a rapist breaking into her home. She said this type of behavior occurred two to three times a month over the course of their 10-year relationship.

Another ex-girlfriend—who met petitioner in September 2019—reported that when they started dating he told her of his sexual fetish associated with scarves and asked her to buy scarves with a border and floral pattern in the middle. Once when she purchased a scarf, he said it was the wrong kind and told her to buy the "correct one." Petitioner then used the scarves to tie her to the bed and gag her, and he requested that she send him photos of herself bound to the bed with scarves.

Another woman who married petitioner in mid-2020 reported that within their first year of marriage, petitioner was drunk and told her that a " 'girl crawled into my bed naked and you're not going to lay in my bed naked and not give me any. So she tried to say I raped her.' " She also reported that petitioner placed a scarf over her mouth and eyes on several occasions. Yet another woman who met petitioner on an online dating website in late 2020 received several scarves from him in the mail; although she was uninterested in him, she kept one scarf that had a floral design with a border.

The People noted that although petitioner's criminal history consisted of relatively minor convictions—one in 1998 for misdemeanor driving without a license (Veh. Code, § 12500, subd. (a)), and another in 1991 for misdemeanor theft (§ 484)—the theft conviction involved petitioner snatching

4

a scarf from the neck of a female stranger and then running away. Petitioner claimed he grabbed the scarf to satisfy his anger and frustration because he was having emotional and personal problems.

Based on the above proffers, the People argued petitioner posed a danger to the alleged crime victim and public safety if released, as well as a flight risk since he is facing life terms. Emphasizing the gravity of the charged offenses and petitioner's ongoing scarf fetish, the People argued there were no nonfinancial conditions of release that could protect the victim or ensure petitioner's presence at trial. Consequently, the People urged the trial court to retain bail in the $5 million amount set or, in the alternative, deny bail pursuant to article I, section 12, of the California Constitution (hereafter section 12).

On April 20, 2021, the trial court held a hearing on the bail motion. Through counsel, petitioner argued he could not afford bail as set and asked for release on his own recognizance with various nonfinancial conditions, e.g., a no contact order with the victim, limitation of his use of dating websites, and Global Positioning System (GPS) tracking. Petitioner also argued that bail could not be denied because the People's mere "proffers" of evidence were insufficient to meet the "clear and convincing evidence" standard. The People disagreed, countering that proffers of evidence are sufficient to support a bail determination and that, per *Humphrey*, the court had to assume the truth of the charges. The victim appeared during the hearing and expressed great fear for her safety and the safety of those close to her should petitioner be released.

Ultimately, the trial court denied petitioner bail under section 12. The court found that *Humphrey* did not require live testimony and concluded: (1) the charged felony offenses involved acts of violence on another person;

5

and (2) based on the People's proffer, there is clear and convincing evidence of a substantial likelihood that petitioner's release would result in great bodily harm to others.

## DISCUSSION

"Habeas corpus is an appropriate vehicle by which to raise questions concerning the legality of bail grants or deprivations. [Citations.] In evaluating petitioner's contentions, this court may grant relief without an evidentiary hearing if the return admits allegations in the petition that, if true, justify relief. [Citations.] On the other hand, we may deny the petition, without an evidentiary hearing, if we are persuaded the contentions in the petition are without merit." (*In re McSherry* (2003) 112 Cal.App.4th 856, 859–860.)

We proceed by "applying the substantial evidence test to pure questions of fact and de novo review to questions of law. [Citation.] '[W]hen the application of law to fact is predominantly legal, such as when it implicates constitutional rights and the exercise of judgment about the values underlying legal principles, [the appellate] court's review is de novo.' " (*In re Taylor* (2015) 60 Cal.4th 1019, 1035; *In re Collins* (2001) 86 Cal.App.4th 1176, 1181.)

### A. General Legal Standards

The court in this case denied bail under section 12(b), which provides a constitutionally based exception to the general rule that a defendant charged with a noncapital offense is entitled to bail. (*In re White* (2020) 9 Cal.5th 455, 462 (*White*).) Section 12(b) provides: "A person shall be released on bail by sufficient sureties, except for: [¶] . . . [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court

6

finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others."

In *Humphrey*, *supra*, 11 Cal.5th 135, the California Supreme Court "sketch[ed] the general framework governing bail determinations." (*Id*. at p. 152.) There, the petitioner had been charged with first degree residential robbery and burglary, infliction of injury on an elder adult, and misdemeanor theft from an elder adult. (*Id*. at pp. 143–144.) At his arraignment, the petitioner requested release on his own recognizance, citing his advanced age, his community ties, and his unemployment and financial condition. (*Id*. at p. 144.) Without inquiring into the petitioner's ability to pay, the trial court ultimately set bail at sums the petitioner could not afford. (*Id*. at p. 148.) The Court of Appeal reversed the trial court's bail order and remanded for a new hearing with consideration of the petitioner's ability to post bail and consideration of less restrictive alternatives in the event he could not afford bail. (*Id*. at p. 156.) The Supreme Court affirmed. As relevant here, *Humphrey* held: "An arrestee may not be held in custody pending trial unless the court has made an individualized determination that . . . detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." (*Id*. at pp. 139–140.) Put another way, "detention is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interests." (*Id*. at pp. 151–152.)

Petitioner argues that before denying bail, the trial court was required under *Humphrey* to find clear and convincing evidence that no nonfinancial condition—i.e., no less restrictive alternative than detention—would protect the state's interests in victim or public safety or ensuring his appearance, and

7

that the court erroneously failed to do so. Neither the San Mateo County District Attorney, appearing as respondent, nor the Attorney General, appearing as amicus curiae, disputes this. To the contrary, both acknowledge the court was required to make a finding on this point.

We likewise agree. Although *Humphrey* involved a claim of excessive bail and not a denial of bail under section 12(b) as here, the generality with which *Humphrey* laid out the foregoing requirement—without resolving whether section 12 and section 28, subdivision (f)(3) of article I of the California Constitution "can or should be reconciled"[3] (*Humphrey*, at p. 155,

---

[3] In brief, the facts underlying this unresolved issue are as follows. In 1982, the voters enacted Proposition 4, which amended section 12 regarding bail. (*People v. Barrow* (1991) 233 Cal.App.3d 721, 722.) The same year, the voters also passed Proposition 8, which contained competing provisions regarding bail. (*People v. Standish* (2006) 38 Cal.4th 858, 877.) Specifically, "Proposition 8 proposed to repeal . . . section 12 and substitute article I, section 28, subdivision (e). The proposed subdivision was entitled 'Public Safety Bail.'" (*Standish*, at p. 874; Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, §§ 2–3, p. 33.) The California Supreme Court subsequently held that "the amendments to . . . section 12 proposed by Proposition 4 took effect, and that the provisions of article I, section 28, subdivision (e) proposed by Proposition 8 did not take effect" because Proposition 4 garnered more votes than Proposition 8. (*Standish*, at p. 875, 877–878; *In re York* (1995) 9 Cal.4th 1133, 1140, fn. 4, citing Cal. Const., art. II, § 10, subd. (b).) Then, in 2008, voters passed Proposition 9, which enacted as article I, section 28, subdivision (f)(3), provisions nearly identical to Proposition 8's Public Safety Bail provisions. (Compare Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 4.1, p. 130, with Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, § 3, p. 33.) Proposition 9, however, did not propose to repeal section 12. (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9.)

Here "we need not decide what role, if any, [article I, section 28, subdivision (f)(3)] has in the decision to deny bail under article I, section 12(b)" because, as in the *White* decision, the trial court below relied on section 12 and any "concerns about victim safety would only reinforce the trial court's decision to deny bail." (*White, supra*, 9 Cal.5th at p. 470.)

8

fn. 7)—reasonably indicates the Supreme Court's contemplation that its holding applies to all orders for pretrial detention under section 12(b). (See *Humphrey*, at pp. 152, 154, 156.)

## B. Application of the Standards

Having identified the legal standards applicable to the trial court's decision to deny bail, we proceed to examine petitioner's arguments about how such standards may be satisfied, and whether they were satisfied here.

### 1. Proffered Evidence

Petitioner first claims the applicable clear and convincing evidence standard cannot be met based on proffers of evidence. Citing the statutory definitions of "evidence," "preliminary fact," and "proffered evidence," (Evid. Code, §§ 140, 400, 401, respectively), petitioner contends section 12 and *Humphrey* require that the People present "actual evidence" to support a bail denial. In other words, only evidence that would be admissible at a formal trial can support pretrial detention. Petitioner also suggests that pretrial detention based on proffered evidence violates due process. We are not persuaded.

Evidence Code section 140 generally defines the term " '[e]vidence' " as "testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." Evidence Code section 400 defines " 'preliminary fact' " as "a fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence." Evidence Code section 401 defines " 'proffered evidence' " as "*evidence*, the admissibility or inadmissibility of which is dependent upon the existence or nonexistence of a preliminary fact." (Italics added.) Nothing in these statutes indicates that the word "evidence"—as used in section 12— denotes only evidence that is admissible at a formal trial. Notably, section 12

9

itself makes no mention of a requirement that evidence be presented in accord with all the formal rules of evidence for admissibility at a trial.[4]

Significantly, in the analogous context of the federal Bail Reform Act (18 U.S.C. § 3141 et seq.), a proffer of evidence that does not meet the rules for admissibility at trial can satisfy the clear and convincing evidence standard, and federal decisions hold or otherwise recognize that proceeding by proffer does not violate due process. As relevant here, the federal act provides: "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [pretrial detention] hearing. The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." (18 U.S.C. § 3142(f).) The United States Supreme Court has upheld the facial validity of the act's detention procedures (*United States v. Salerno* (1987) 481 U.S. 739, 746–747, 751–752 (*Salerno*)), and other federal decisions have specifically upheld the propriety and validity of permitting the government to proceed by proffer (e.g., *United States v. Smith* (D.C. Cir. 1996) 79 F.3d 1208, 1210; *United States v. Gaviria* (11th Cir. 1987) 828 F.2d 667, 669; *United States v. Cardenas* (9th Cir. 1986) 784 F.2d 937, 938; *United States v. Delker* (3d. Cir. 1985) 757 F.2d 1390, 1395–1396; *United States v. Acevedo-Ramos* (1st Cir. 1985) 755 F.2d 203, 207–208.)

In rejecting the contention that the procedures of the Bail Reform Act violate due process, *Salerno* explained: "Detainees have a right to counsel at the detention hearing. [Citation.] They may testify in their own behalf,

---

[4]     Petitioner's seeming reliance on *Humphrey* is also unavailing. The question of whether proffered evidence can support a denial of bail was neither presented nor discussed in *Humphrey*.

present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. [Citation.] The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. [Citation.] The Government must prove its case by clear and convincing evidence. [Citation.] Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. [Citation.] The Act's review provisions . . . provide for immediate appellate review of the detention decision. [¶] We think these *extensive* safeguards suffice to repel a facial challenge." (*Salerno*, *supra*, 481 U.S. at pp. 751–752, italics added.)

*Salerno* and the foregoing federal cases would seem to foreclose a federal constitutional due process challenge to the sufficiency of proffers in bail hearings, at least where, as here, procedural safeguards are provided similar to those provided in the federal context. In line with the procedural safeguards discussed in *Salerno*, here petitioner had counsel at his bail hearing. Additionally, there is no indication in the record that the trial court disallowed defendant from testifying or presenting evidence (by proffer or otherwise); to the contrary, the court allowed defense counsel to present information by way of her own statements and representations, such as about petitioner's indigency, employment, appearance history, and performance on probation. The trial court was guided by similarly enumerated factors, and the burden of proof was by clear and convincing evidence. (See Cal. Const., art. I, § 12; Pen. Code, § 1275, subd. (a); *Humphrey*, *supra*, 11 Cal.5th at p. 152.) The court was obligated to provide a statement of reasons for the

11

detention, included in writing in the court's minutes (*Humphrey*, at pp. 155–156; see part B.3(b), *post*), and the decision was subject to immediate review (§§ 1270.2, 1490).  Accordingly, we cannot agree with petitioner's suggestion that reliance on proffers of evidence categorically renders a bail decision invalid under federal due process principles.[5]

Moreover, petitioner provides no legal authority or argument supporting the notion that a state due process analysis would yield a different result.[6]  The language of the federal and state due process guarantees are "virtually identical," and so California courts look "to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)  "With a minor modification, we have adopted the *Mathews* [*v. Eldridge* (1976) 424 U.S. 319] balancing test as the default framework for analyzing challenges to the sufficiency of proceedings under our own due process clause.  The first three factors—the private interest affected, the risk of erroneous deprivation, and the government's interest—are the same.

---

[5]    As indicated, *Salerno* referred to the procedural safeguards in the Bail Reform Act as "extensive."  (*Salerno, supra*, 481 U.S. at p. 752.)  Given the lack of adequate briefing on this issue, we do not consider or decide whether and which of those federal safeguards may be necessary to defeat a due process challenge.  Nor do we suggest that all such safeguards are required to repel a due process challenge.

[6]    Petitioner attempts to distinguish *Salerno* on the ground that the federal Bail Reform Act specifically allows for the use of proffers at bail proceedings, but fails to explain why the source of the practice of using proffers is relevant.  Petitioner also points out that section 12 requires clear and convincing evidence, but the same is true in the federal act.  (18 U.S.C. § 3142(f); *Salerno, supra*, 481 U.S. at p. 750.)

[Citations.]  In addition, we may also consider a fourth factor, ' "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." ' " (*Ibid.*)  "[C]ogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution." (*Gabrielli v. Knickerbocker* (1938) 12 Cal.2d 85, 89; see, e.g., *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 285, fn. 16.)  Petitioner offers no such cogent reasons here, and we perceive no legal or logical reason why state due process principles require such a departure in this context.

Contrary to petitioner's contention, *Naidu v. Superior Court* (2018) 20 Cal.App.5th 300 (*Naidu*) does not compel a different result.  There, the petitioners were criminally charged with fraudulent use of a contractor's license and released on their own recognizance (O.R.), but the trial court ordered a suspension of their licenses from the California Contractors State License Board (Board) as a condition of O.R. release.  (*Naidu*, at p. 305.)  Analyzing the petitioners' challenge to that condition using due process balancing inquiries, *Naidu* concluded both federal and state due process clauses required that "*at least some evidence* of danger to the public support an order suspending a business license as part of a bail order."  (*Id.* at pp. 305, 311–313, italics added.)  *Naidu* then concluded no such evidence was presented, indicating the Board "submitted very little that might even be construed as evidence that the public would be in danger if petitioners retained use of their business license."  (*Ibid.*)  As *Naidu* recounted, the Board's legal brief asserted that the petitioners exhibited a profound lack of judgment, a flagrant disrespect for the health and safety of others, and a

13

violation of trust accorded to contractors, but the court concluded such statements by counsel were not evidence sufficient to support license suspension. (*Ibid.*) The court observed the only "admissible" evidence presented in support of the Board's assertion was a declaration of counsel that amounted to "no more" than a restatement of the Board's litigation position and "its belief that it would be beneficial if the trial court suspended petitioners' license." (*Ibid.*) But this "[did] not constitute evidence that petitioners pose[d] such a danger to the public that suspending their business licenses was necessary." (*Ibid.*)

True, *Naidu* expressly spoke of the need for "actual evidence regarding the danger petitioners allegedly pose to the public" before a court can order suspension of a business license as part of a bail order (*Naidu*, *supra*, 20 Cal.App.5th at p. 312.) But *Naidu* did not involve a section 12(b) offense, and there is no indication the trial court there was prepared to require pretrial detention in the absence of a license suspension condition. Moreover, *Naidu* did not address the federal case law upholding the federal constitutional validity of relying on proffers in the pretrial detention context; nor did it consider whether due process principles would preclude pretrial detention based on a reliable proffer of evidence.

In discussing *Naidu*, petitioner does not analyze whether the competing interests in a due process analysis regarding a decision to suspend a business license as a condition of release on bail (or O.R. release) are comparable to the interests involved in a pretrial detention decision under section 12(b)—particularly the state's interests—including administrative and fiscal burdens. For example, he does not address whether cases involving the potential suspension of a business license as a condition of pretrial release are as common as those wherein pretrial detention decisions

14

implicate substantial harm to public or victim safety, or whether the burdens of categorically requiring admissible evidence would be the same or similar when license suspensions are not at issue. Indeed, we note such burdens would fall not just on the People, but also on criminal defendants and defense attorneys when presenting information at a bail hearing. Moreover, detention orders—which are interim rulings—can be undone relatively quickly upon a showing of changed circumstances. (*In re Alberto* (2002) 102 Cal.App.4th 421, 426–427, 430–431; cf. §§ 1273, 1289.) It is not clear, however, whether a professional license suspension is easily reversed and whether reversal of a suspension can cure other reputational business interests at play. As it is not our role to make arguments for petitioner or to consider arguments not raised or meaningfully addressed below or in the habeas corpus petition, we decline to do so.[7] (*In re Seaton* (2004) 34 Cal.4th 193, 200; see *People v. Duvall* (1995) 9 Cal.4th 464, 475.)

Finally, petitioner contended at oral argument that pursuant to Evidence Code section 300, evidence presented at any bail or pretrial detention hearing must comply with all the formal rules for admissibility of evidence at a trial. Petitioner, however, neither previously raised nor properly briefed this statute-based issue. Petitioner does not, for example, address the proper interpretation of Evidence Code section 300 or any bail-related statutes (e.g., Pen. Code, § 1319[8]). Nor does petitioner address case

---

[7] Petitioner—who is represented by counsel—is required to present arguments under specific headings and to support arguments with authority when possible. (Cal. Rules of Court, rules 8.204(a)(1)(B) & 8.384(a)(1)–(2).)

[8] Section 1319 provides in relevant part that in cases where a defendant is charged with a violent felony as described in section 667.5, subdivision (c), the trial court "shall consider" the following in determining whether or not to grant release of the defendant: "(1) The existence of any outstanding felony warrants on the defendant. [¶] (2) Any other information presented in the

15

law that allows use of technically inadmissible evidence at hearings that implicate other liberty interests, such as sentencing and probation violation hearings. (See, e.g., *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066 [" 'As long as hearsay testimony bears a substantial degree of trustworthiness it may legitimately be used at a probation revocation proceeding.' "]; *People v. Lamb* (1999) 76 Cal.App.4th 664, 683 ["A sentencing judge may consider responsible unsworn or out-of-court statements concerning the convicted person's life and characteristics."].) Ultimately, given the untimeliness of petitioner's argument and lack of briefing (Cal. Rules of Court, rules 8.204(a)(1)(B) & 8.384(a)(1)–(2)), we decline to address the argument. (*People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7.)

In sum, we conclude, as a general matter, that proffers of evidence may satisfy section 12(b)'s clear and convincing evidence standard without offending federal or state due process principles. In so concluding, we emphasize that it remains within the discretion of the trial court to decide whether particular instances of proffered evidence may be insufficient, and whether to insist on the production of live testimony or other evidence in compliance with more stringent procedural requirements. (Cf. *United States v. Delker*, *supra*, 757 F.2d at p. 1395; *United States v. Acevedo-Ramos*, *supra*, 755 F.2d at pp. 206–208.)

### 2. *Application of Section 12(b)*

In reviewing the trial court's decision to deny bail under section 12(b), we assess two elements: (1) "whether the record contains substantial

---

report prepared pursuant to Section 1318.1. The fact that the court has not received the report required by Section 1318.1, at the time of the hearing to decide whether to release the defendant on his or her own recognizance, shall not preclude that release. [¶] (3) *Any other information presented by the prosecuting attorney.*" (Italics added.)

evidence of a qualifying offense" and if so, then (2) "whether any reasonable fact finder could have found, by clear and convincing evidence, a substantial likelihood that the defendant's release would result in great bodily harm to one or more members of the public." (*White, supra*, 9 Cal.5th at p. 471.) If both elements are satisfied, we evaluate whether the trial court's denial was an abuse of discretion. (*Ibid*.) "An abuse of discretion occurs when the trial court, for example, is unaware of its discretion, fails to consider a relevant factor that deserves significant weight, gives significant weight to an irrelevant or impermissible factor, or makes a decision so arbitrary or irrational that no reasonable person could agree with it." (*Id*. at p. 470.)

First, does the record contain substantial evidence of a qualifying offense? The answer is yes. Petitioner does not dispute that he was charged with one or more qualifying felonies involving acts of violence and sexual assault or that "the facts are evident or the presumption great" as required by section 12(b). Indeed, had petitioner challenged the trial court's finding on this point, we would easily reject it based on the qualifying nature of the charges and the substantial evidence tending to show his guilt as the perpetrator, including the DNA evidence and the evidence of petitioner's idiosyncratic scarf fetish, as well as the specific design of the scarves he used, i.e., floral with a border.

Second, could any reasonable fact finder have found, by clear and convincing evidence, a substantial likelihood that the defendant's release would result in great bodily harm to one or more members of the public? Again, the answer is yes.

Petitioner was charged with attempted willful, deliberate, and premeditated murder and aggravated mayhem, and it was alleged that he personally used a deadly weapon—a knife—to inflict great bodily injury on

17

the victim. Both of the charged crimes are "serious" and "violent" felonies (§ 1192.7, subd. (c)(2), (7), (9), (23); § 667.5, subd. (c)(2), (7), (8), (12)) that carry the severe sentence of life in prison, albeit with the possibility of parole (§§ 205, 664, subd. (a)), and the court was required to assume the truth of these charges (*Humphrey, supra*, 11 Cal.5th at p. 153).

Significantly, the People's proffer of evidence concerning the circumstances of the underlying offenses was extensive and detailed and included the following. Petitioner bound and raped the victim, then tried to kill her. He tried to stab her in the back several times but was unsuccessful only because the knife was dull. He strangled her, and he sawed at her neck to within a hair's breadth of her jugular. Within about two years of the 1989 offenses, petitioner was convicted of theft after he targeted a female stranger and grabbed a scarf tied around her neck "to satisfy his anger and frustration" because he "had been having emotional and personal problems." And as recounted earlier, multiple women romantically or otherwise involved with petitioner between 1997 and late 2020 provided statements to prosecution investigators showing that petitioner continues to act on a sexual fetish involving scarves and binding. While the proffered evidence indicated these women were willing partners, it also showed that petitioner consistently sought to exert sexual control over women involving fantasized violence and non-consent.

Based on the record, we conclude a reasonable fact finder could have found clear and convincing evidence that petitioner's release on bail would pose a substantial likelihood of great bodily harm to others. The proffered evidence amply supports the conclusion that petitioner is an extremely dangerous person. Petitioner is charged with grave offenses, the circumstances of which show he is capable of tremendous violence. His

relationships with women after 1989 and through at least 2019 indicate he continues to be compelled by sexually aggressive impulses. And for most of his life, petitioner has escaped detection and accountability for the vicious crimes he committed in 1989. Indeed, during the offense, defendant indicated he was trying to kill the victim to ensure he would escape undetected. Now, in his mid-fifties, he is facing what will potentially be confinement in prison until the end of his life. While the probation department's pretrial risk assessment suggested petitioner was an appropriate candidate for release on his own recognizance with enhanced monitoring, the trial court was neither bound to follow that recommendation nor constrained to forgo its own individualized consideration of factors for making a bail determination.[9] (*Humphrey, supra*, 11 Cal.5th at p. 152.)

Petitioner contends the trial court's risk-of-harm finding is unsupported or unreasonable given the number of years that elapsed between the alleged 1989 offenses and the present and the absence of any allegation that he committed any criminally violent act in the interim. We cannot agree. The trial court was not compelled to find that petitioner's past violent behavior was an unusual one-off situation unlikely to recur, or to accept his benign self-presentation. (See *White, supra*, 9 Cal.5th at pp. 468–469 [upholding pretrial detention under section 12(b) where charged crimes were more recent but involved factual allegations far less egregious than those here].) Here, the court's decision finds substantial support in the record and was plainly within the bounds of reason. No abuse of discretion appears.

---

[9] Again, that risk assessment was completed simply by considering the eight factors noted in footnote 2, *ante*, without interviewing petitioner, or mentioning the circumstances underlying his offense.

Relying on reports reflecting pretrial release data in other jurisdictions, petitioner next appears to contend that as a statistical matter, it is unlikely he will reoffend if released. We are not persuaded. Setting aside the questionable relevance of such data to our review on appeal, giving weight to petitioner's statistical reports seems at odds with *Humphrey*'s holding that bail decisions require "an individualized consideration of the relevant factors" (11 Cal.5th at p. 152) and "careful consideration of the individual arrestee's circumstances." (*Id*. at p. 156.)

Petitioner further argues that the trial court detained him based solely on the charges in the complaint and that the court created an additional non-constitutionally based "category of offenses ineligible for pretrial release . . . by judicial fiat." We cannot agree. The record plainly demonstrates the court based its decision on the proffered evidence, as well as the charges enumerated in the complaint.

### 3. *Application of the Humphrey Requirements*

As discussed, *Humphrey* determined that principles of due process require the trial court to find, by clear and convincing evidence, that no less restrictive condition than detention can reasonably protect the interests in public or victim safety, and the arrestee's appearance in court. (*Humphrey*, *supra*, 11 Cal.5th at p. 154.) Petitioner argues the court "failed to address this prong of *Humphrey's* analysis entirely."

Although the record does not reflect an express trial court finding on this point, respondent cites portions of the record where the court acknowledged that petitioner lacked financial resources to make bail and where the parties discussed nonmonetary alternatives. Accordingly, respondent contends the court did, in fact, consider less restrictive

20

nonmonetary alternatives to detention and implicitly made the required finding.

We are in limited agreement with respondent that, as a jurisprudential matter, such a finding could be implicit and inferred from the record. Ordinarily, trial court judgments and orders are presumed correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Ambiguities in the record are resolved in favor of affirmance (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631), and an appellate court ordinarily presumes "the [trial] court knows and applies the correct statutory and case law." (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Where, as here, nonfinancial conditions of release were discussed directly before the court's denial of the bail motion, one would have to assume the worst to conclude the court ignored both the issue and the law in making its decision.

Nonetheless, even though the general presumptions in favor of a judgment or order might otherwise support a finding made sub silentio, *Humphrey* specifically requires, as a matter of procedural due process, that a court entering a pretrial detention order set forth "the reasons for its decision on the record and to include them in the court's minutes." (*Humphrey*, *supra*, 11 Cal.5th at p. 155.) Thus, the reasons supporting a denial of bail cannot be implied.

In this regard, *Humphrey* explains that the requirement of explicit articulation will "facilitate review of the detention order, guard against careless or rote decisionmaking, and promote public confidence in the judicial process." (*Humphrey*, *supra*, 11 Cal.5th at pp. 155–156.) And generally, an adequate statement of reasons is one that furthers these purposes and

"apprise[s] [the reviewing court] of the analytical process by which the trial court arrived at its conclusions." (*In re Pipinos* (1982) 33 Cal.3d 189, 198, 202 (*Pipinos*); see *Kent v. United States* (1966) 383 U.S. 541, 561 (*Kent*) ["Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions."].) Thus, trial courts choosing to deny bail must separately state and identify their reasons for finding that less restrictive alternatives to detention could not reasonably protect the interests in public or victim safety or ensuring the defendant's appearance.

Here, the trial court found, by clear and convincing evidence, a substantial likelihood that petitioner's release would result in great bodily harm to others, and it identified its reasons supporting that finding. But the court did not actually address any less restrictive alternatives to pretrial detention and did not articulate its analytical process as to why such alternatives could not reasonably protect the government's interests. And while overlapping reasons may exist for making the applicable findings under section 12(b) and *Humphrey*, the court's failure to articulate its evaluative process requires that we speculate as to why the court believed that no nonfinancial conditions could reasonably protect the interests in public or victim safety. As such, the record here does not permit meaningful appellate review.[10] (*In re Podesto* (1976) 15 Cal.3d 921, 937 ["meaningful judicial

---

[10] We do not suggest that a trial court's statement must be formal or that there are "magic words" that a court must recite. (*Kent, supra,* 383 U.S. at p. 561 [statement of reasons need not be formal nor necessarily include "conventional findings of fact"]; *In re Podesto, supra,* 15 Cal.3d at p. 938 [statement of reasons in support of an order denying a motion for bail on appeal "need not include conventional findings of fact"].) But the statement should "clearly articulate the court's evaluative process" and "set forth the basis for the order with sufficient specificity to permit meaningful review." (*Pipinos, supra,* 33 Cal.3d at p. 205; *Kent, supra,* at p. 561.)

review is often impossible unless the reviewing court is apprised of the reasons behind a given decision"].)

We now address the consequence of this shortcoming. In *Pipinos, supra*, 33 Cal.3d 189, the trial court's failure to adequately articulate its reasons for denying bail on appeal ultimately resulted in reversal because the trial court's conclusory comments were insufficient to enable meaningful review of the defendant's abuse of discretion contention. (*Id.* at pp. 203–205.) Yet, there are other cases indicating the failure to provide an adequate statement of reasons does not necessarily require reversal but is subject to a harmless error analysis. (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1036; see *People v. Scott* (1994) 9 Cal.4th 331, 355 (*Scott*).) Error of this type may be harmless in cases where there is " 'overwhelming evidence' " supporting the court's decision. (*C.S.*, at p. 1036.) This may be so even if the failure to make a statement of reasons amounts to an error of constitutional dimensions. (E.g., *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 722–723 [applying harmless error analysis to affirm order denying juvenile court retention that was supported by overwhelming evidence]; see generally Cal. Const., art. VI, § 13; Pen. Code, § 1404.)

Given the record before us, we need not resolve this apparent tension in the case law. Here, the parties discussed nonfinancial conditions, but the discussion was not extensive. In short, defense counsel argued that any concern about flight could be addressed if the court were to order GPS tracking or other conditions for release as set out in the pretrial release report. The prosecutor responded that no less restrictive conditions could protect the community, and that electronic home monitoring would not protect women whom petitioner might meet online or out and about. Defense counsel then countered that any concern about petitioner dating or being on

dating websites could be addressed if the court were to limit or monitor his internet usage; order GPS monitoring; issue no contact orders as to the victim; or impose other conditions suggested by pretrial services. The parties made similar arguments in their motion and opposition papers, but beyond this, the record reflects no other discussion and no evaluation by the court about nonmonetary or other conditions.

In sum, the record does not permit meaningful appellate review, and we cannot say there was overwhelming evidence supporting a conclusion that less restrictive alternatives to detention could not reasonably protect the interests in public or victim safety. (See *C.S.*, *supra*, 29 Cal.App.5th at p. 1036.) As such, we will remand this matter to the trial court for further findings. We express no opinion as to the result the court should reach on remand.

### (a) Forfeiture

Before concluding, we address two further issues—the first being whether claimed error concerning the inadequacy of a statement of reasons can be forfeited. We examine this issue because the record does not show that petitioner objected to the adequacy of the trial court's statement of reasons at the bail hearing.

The Attorney General, as amicus curiae, takes the position that error concerning the omission or inadequacy of a statement of reasons regarding less restrictive alternatives to detention is "exhausted" because petitioner argued below that such alternatives could protect the government's interests, and failure to lodge a timely objection does not result in forfeiture.

We tend to agree that a petitioner who urges the availability of less restrictive alternatives to detention exhausts his or her superior court remedies as to that issue, and generally will be entitled to review of that

24

issue. And implicitly, such a petitioner also requests that the court provide an adequate statement of reasons to allow for meaningful judicial review. (*In re Podesto*, *supra*, 15 Cal.3d at p. 937.)

But we do not foreclose the possibility of a situation where a claim concerning inadequacy of a statement of reasons can be forfeited. " ' "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*People v. Saunders* (1993) 5 Cal.4th 580, 590.) In *Scott*, *supra*, 9 Cal.4th 331, for example, the court explained that the doctrine of waiver (or forfeiture, as it is now commonly referred to) applied "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*Scott*, at p. 353.) This was "fair and reasonable given the nature of the sentencing decisions at issue and the procedural backdrop against which they are made," such as that "[t]he parties have ample opportunity to influence the court's sentencing choices" insofar as "[b]oth sides often know before the hearing what sentence is likely to be imposed and the reasons therefor. Such information is contained in the probation report, which is required in every felony case and generally provided to the court and parties before sentencing." (*Id.* at pp. 348–351.)

If the doctrine of forfeiture can apply to a court's failure to properly articulate its discretionary sentencing decisions, a fortiori it can apply to decisions to deny bail. Of course, depending on the timing of the bail hearing, a defendant may not have any idea what to expect in terms of the court's decision and what might support it. Thus, in many cases, it may not be "fair or reasonable" to apply the doctrine of forfeiture.

In this case, the bail hearing took place before the preliminary examination, and nothing in the record indicates the parties were "clearly apprised" of what the bail decision would be and the reasons for it in advance of the hearing. Indeed, the pretrial services court report recommended release on various conditions, and even the prosecutor asked for no-bail *as an alternative* to the imposition of a $5 million bail condition. Under these circumstances, we decline to deem petitioner's claim about the inadequacy of the statement of reasons forfeited.

### (b) Reasons in the Minutes

The second subsidiary issue we address is petitioner's argument that the trial court failed to comply with *Humphrey's* mandate that courts include the reasons for denying bail in the minutes. As stated, *Humphrey* requires, as a matter of procedural due process, that courts entering an order resulting in pretrial detention "set forth the reasons for its decision on the record and . . . *include them in the court's minutes*." (*Humphrey*, *supra*, 11 Cal.5th at p. 155, italics added.)

Nothing in the record indicates this issue was ever brought to the trial court's attention, though as the Attorney General notes in his amicus brief, *People v. Bonnetta* (2009) 46 Cal.4th 143 suggests the failure to object should not result in forfeiture in this context because a minute order is entered only after the hearing and errors in the minutes are not ones the parties can easily detect or ensure are avoided. (*Bonnetta*, at p. 152 [addressing failure to comply with statutory requirement for inclusion of a statement of reasons in court minutes in context of discretionary dismissals under section 1385].) In any case, we need not decide applicability of the forfeiture doctrine here or whether the issue should be considered "exhausted" because a remand is necessary to allow the trial court to state the reasons why nonfinancial or

26

other less restrictive alternatives to detention could not reasonably protect the interests in public or victim safety.  We will simply direct trial court correction of this error as well.

### 4.  Attorney Fees and Costs

Finally, we decline petitioner's request for attorney fees and costs pursuant to Code of Civil Procedure section 1021.5.  (*In re Head* (1986) 42 Cal.3d 223, 228 ["A decision which has as its primary effect the vindication of the litigant's personal rights is not one which brings into play the attorney fees provisions of section 1021.5."].)

### DISPOSITION

The order denying bail is conditionally vacated.  We remand the matter for further findings as to whether clear and convincing evidence would support a conclusion that no less restrictive alternatives to detention could reasonably protect the government's interests in pretrial detention. (*Humphrey*, *supra*, 11 Cal.5th at pp. 154–155.)  The trial court shall provide an adequate statement of reasons and a corrected minute order, in accordance with the views expressed herein.  For the sake of efficiency, the court may, but need not, vacate its prior order denying bail and hold a new bail hearing in order to take new evidence or any other action it deems necessary.

We decline petitioner's other requests for relief, including his request for release on his own recognizance with appropriate conditions or with an affordable amount of bail, and his request for attorney fees.

_____

Fujisaki, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Rodriguez, J.


A162891/*In re John Harris Jr.*

28

<u>In re John Harris Jr.</u>
(A162891)


Trial Court:        San Mateo County


Trial Judge:        Hon. Amarra A. Lee


Attorneys:        Law Offices of Marsanne Weese, Marsanne Weese and Rose Mishaan, under appointment by the First District Court of Appeal, for Petitioner.

Stephen M. Wagstaffe, District Attorney, Alpana Samant, Deputy District Attorney, for Respondent.


Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Katie L. Stowe, Deputy Attorney General, for Attorney General Rob Bonta as Amicus Curiae upon the request of the Court of Appeal.